ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, peticionaria, *v.* COORDINADORA UNITARIA DE TRABAJADORES DEL ESTADO, recurrida.

*Número:* CC-2003-319     *Resuelto:* 19 de octubre de 2005

*Jesús M. Díaz Rivera*, abogado de la parte peticionaria; *Ricardo Santos*, abogado de la parte recurrida; *Carlos Carrión Crespo*, director de la División Legal de la Comisión de Relaciones del Trabajo del Servicio Público.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El 7 de junio de 2001, la Coordinadora Unitaria de Trabajadores del Estado (C.U.T.E.) presentó ante la Comisión de Relaciones del Trabajo del Servicio Público (Comisión) una petición para representar a los empleados de la Admi-

nistración de Reglamentos y Permisos (A.R.Pᴇ.) para propósitos de la negociación colectiva. En virtud de lo anterior, el 11 de julio de 2001 la Comisión celebró una sesión especial, en la que participó tanto C.U.T.E. como A.R.Pᴇ.

Luego de celebrada la referida sesión, el 15 de febrero de 2002 la Comisión emitió una resolución, sobre determinación de unidad apropiada, y ordenó la celebración de una elección para que los empleados de A.R.Pᴇ. determinaran si deseaban ser representados por C.U.T.E. para propósitos de la negociación colectiva.[1] Inconforme con una porción de la determinación, A.R.Pᴇ. presentó una moción con sus excepciones[2] el 1ro de marzo de 2002, solicitando que fueran excluidos ciertos puestos de la unidad apropiada,[3] por entender que éstos estaban íntimamente ligados a la gerencia.

En el entretanto, la elección se celebró el 26 de marzo de 2002. No obstante, la Comisión *recusó* los votos que emitieron los empleados que integraban los puestos que A.R.Pᴇ. solicitó que fueran excluidos, mientras se resolvía la moción con las excepciones. Luego de celebrada la elección, el 17 de abril de 2002, la Comisión *certificó* a C.U.T.E. como el representante exclusivo de los integrantes de la unidad apropiada, debido a que el número de votos recusados *no* eran suficientes para afectar el resultado de la elección.

Así las cosas, A.R.Pᴇ. presentó el 22 de julio de 2002 una moción suplementaria, en donde expuso argumentos adicionales sobre la doctrina de empleados íntimamente liga-

[1] En la referida resolución, la Comisión de Relaciones del Trabajo del Servicio Público (Comisión) hizo determinaciones de hecho y conclusiones de derecho sobre los puestos incluidos en la unidad apropiada. Ésta fue firmada por el Presidente de la Comisión.

[2] La referida moción fue presentada en virtud de la Sec. 309(H) del Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público, Reglamento Núm. 6385 de 28 de diciembre de 2001, *que le permite a los participantes de la vista presentar sus excepciones a la determinación de unidad apropiada.*

[3] Los puestos que la Administración de Reglamentos y Permisos (A.R.Pᴇ.) solicitó que fueran excluidos son: Analista en Recursos Humanos I al III, Ingeniero I y II, Oficial de Relaciones Públicas, Analista de Contabilidad III, Analista de Presupuesto II, Facilitador Administrativo II y Técnico de Oficina I y II.

dos a la gerencia, reiterando, de paso, su solicitud de exclusión de los puestos de la unidad apropiada que había presentado en la moción de 1 de marzo de 2002. La Comisión resolvió mantener en la unidad apropiada los puestos que A.R.Pe. solicitó que fueran excluidos de ésta.(4)

Inconforme con la referida determinación, el 24 de septiembre de 2002 A.R.Pe. presentó ante el Tribunal de Apelaciones un recurso de revisión de decisión administrativa, señalando que erró la Comisión al mantener en la unidad apropiada los puestos que se le habían solicitado que fueran excluidos, contraviniendo la doctrina de empleado íntimamente ligado a la gerencia, así como por tratarse de empleados gerenciales con responsabilidades de supervisión.

La Comisión presentó un escrito, titulado Comparecencia Especial en Solicitud de Desestimación, en el que sostuvo que el foro apelativo intermedio no tenía jurisdicción para atender la controversia planteada debido a que la determinación de unidad apropiada no es una orden o resolución final, conforme a Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), y, además, porque ésta constituye un ejercicio de la función investigativa de la agencia que no está sujeta a revisión judicial. La Comisión argumentó que, utilizando por analogía la interpretación de la Ley de Relaciones del Trabajo de Puerto Rico, las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de la Junta de Relaciones del Trabajo de Puerto Rico (Junta) sobre práctica ilícita del trabajo.

A.R.Pe. presentó su Réplica a Comparecencia Especial en Solicitud de Desestimación, en la cual expresó que la Comisión no tenía "legitimación activa" para comparecer ante el Tribunal de Apelaciones, ya que éste es un orga-

---

(4) En esta resolución la Comisión también incluyó determinaciones de hecho y conclusiones de derecho sobre los puestos en controversia, y fue firmada por el Presidente de la Comisión.

nismo cuasijudicial que no es parte en el proceso; sostuvo, además, que la resolución de la Comisión es revisable, ya que la configuración de una unidad apropiada era determinante en el ejercicio de los derechos y las obligaciones de los empleados y patronos en el marco de las relaciones laborales. Asimismo, indicó que el planteamiento era una cuestión novel a ser resuelta por el tribunal en cuanto a si bajo la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico se reconoce, al configurar una unidad apropiada, la doctrina de exclusión conocida como "empleado íntimamente ligado a la gerencia".

El foro apelativo intermedio emitió una resolución *desestimando* el recurso de revisión de decisión administrativa por falta de jurisdicción, por entender que la determinación de unidad apropiada no es revisable por ser una decisión interlocutoria, y porque en este caso no se configuraban las circunstancias que le permiten dilucidar la controversia por vía de excepción. Fundamentó su determinación en que la determinación de unidad apropiada no es una acción administrativa que adjudique algún derecho u obligación, y que, además, no es una orden o resolución final, ya que las partes tienen la oportunidad de presentar ante la Comisión una petición de clarificación de unidad apropiada. Finalmente, y utilizando por analogía la Ley de Relaciones del Trabajo de Puerto Rico, señaló que las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de práctica ilícita.(⁵)

Inconforme con la referida determinación, A.R.Pᴇ. acudió ante este Tribunal mediante una petición de *certiorari* alegando, en síntesis y en lo pertinente, que erró el foro apelativo intermedio al declararse sin jurisdicción para revisar la determinación de unidad apropiada que hizo la Comisión.

*Expedimos* el recurso y concedimos un término a ambas

---

(⁵) Oportunamente, A.R.P.ᴇ. presentó una moción de reconsideración, la cual fue declarada "no ha lugar" mediante una resolución notificada el 1 de abril de 2003.

partes para que se expresaran en torno a sus respectivas posiciones. La parte peticionaria compareció; no así la parte recurrida.[6] Estando en condiciones de resolver el recurso presentado, procedemos a así hacerlo.

I

■ La Ley Núm. 45 de 25 de febrero de 1998, según enmendada,[7] 3 L.P.R.A. sec. 1451 *et seq.*, conocida como Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico (Ley Núm. 45), fue aprobada con el propósito de

> ... conferirle a los empleados públicos en las agencias tradicionales del gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico,[8] *el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en esta Ley*. Esos parámetros se remiten a tres criterios esenciales, a saber: 1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; 2) evitar interrupciones en los servicios que prestan las agencias gubernamentales; y, 3) promover la productividad en el servicio público. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 45 de 25 de febrero de 1998, Leyes de Puerto Rico, pág. 148.

■ A esos fines, la Ley Núm. 45 le reconoció a los empleados de las agencias del Gobierno central el derecho a organizarse y afiliarse en organizaciones sindicales de su

---

[6] Mediante una resolución a esos efectos, el 30 de enero de 2004 le concedimos a la Coordinadora Unitaria de Trabajadores del Estado (C.U.T.E.) un término de treinta días para presentar su alegato, apercibiéndole que de no recibirlo dentro del término indicado, el caso quedaría sometido sin el beneficio de su comparecencia.

[7] El referido estatuto fue enmendado por la Ley Núm. 96 de 7 de agosto de 2001.

[8] Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 61 *et seq.*

elección. Véase 3 L.P.R.A. sec. 1451b.[9] De esta manera, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse podrán escoger, mediante voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. Véase 3 L.P.R.A. sec. 1451g. La organización sindical que prevalezca en las elecciones, y que sea certificada como representante exclusivo de los empleados incluidos en esa unidad apropiada, tendrá la autoridad para negociar con la agencia correspondiente un convenio colectivo "en el que se discuten y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo". 3 L.P.R.A. sec. 1451j.

■ Con el propósito de hacer cumplir sus disposiciones, la Ley Núm. 45 creó un organismo administrativo denominado "Comisión de Relaciones del Trabajo del Servicio Público", y le confirió facultades cuasilegislativas y cuasijudiciales, delimitadas en la ley. 3 L.P.R.A. sec. 1452t. La Comisión es la entidad encargada de

> ... [i]nterpretar, aplicar y hacer cumplir las disposiciones de [esta ley] en todo lo relativo *a procesos de organización, certificación y descertificación de organizaciones sindicales*; en los procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, en los procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que [esta ley] le delegue alguna actuación en particular. (Énfasis suplido.) 3 L.P.R.A. sec. 1452t(a).

■ En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa estableció el procedimiento a seguir en los procesos de organización y certificación de organizaciones sindicales para la negociación colectiva. Para ello, la Ley Núm. 45 establece que la Comisión *es el organismo con la autoridad para determinar la composición de una unidad apropiada para la negociación colectiva* de aquellos empleados de las

---

[9] Véanse: *Asociación Maestros v. Comisión*, 159 D.P.R. 81 (2003); *Federación v. Molina*, 160 D.P.R. 571 (2003).

agencias del Gobierno central por quienes se solicite intervenir, tomando en cuenta los criterios establecidos en el propio estatuto.([10]) El Art. 4, Sec. 4.5 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451g), dispone:

> Las organizaciones sindicales interesadas en ser certificadas como representantes exclusivos de una unidad apropiada para fines de negociación colectiva someterán ante la Comisión prueba demostrativa de que un treinta por ciento (30%) del total de empleados en dicha unidad apropiada *ha endosado una petición para que se lleve a cabo una votación para determinar si desean estar representados por una organización sindical.*
>
> Una vez la Comisión certifique la petición, la Comisión ordenará una votación entre los empleados de la unidad apropiada. Cualquier organización sindical que desee participar en esta votación deberá someter ante la Comisión el endoso de por los menos el veinte por ciento (20%) del total de empleados de la unidad apropiada.
>
> La Comisión certificará como el representante exclusivo de los empleados aquella organización sindical que obtenga mediante votación secreta el apoyo de la mayoría del total de los empleados que participen en la elección.
>
> Si ninguna de las organizaciones sindicales que participen en este elección obtuviere el voto de la mayoría del total de los empleados que participen en la elección, la Comisión realizará una elección final mediante votación secreta entre las dos organizaciones sindicales que hubieren obtenido el mayor número de votos y la que de éstas obtenga la mayoría de los votos, será certificada como el representante exclusivo de los empleados. (Énfasis suplido.)

■    Conforme a la referida disposición estatutaria, la Comisión tendrá la autoridad de certificar, como represen-

---

([10]) El Art. 4, Sec. 4.3 de la Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. sec. 1451e), dispone:

"La Comisión *determinará las unidades apropiadas* que existirán en las agencias, en consideración, entre otros, a los siguientes criterios:

"(a) Comunidad de intereses entre los empleados.

"(b) Evitar el fraccionamiento excesivo de las unidades.

"(c) Patrones actuales de organización formal e informal de los empleados.

"(d) Protección del pleno disfrute de los derechos reconocidos en este capítulo.

"(e) Viabilidad de las negociaciones.

"(f) Similitud funcional en requerimiento o condiciones del trabajo[.]

"(g) Sistema de personal establecido y planes de clasificación y retribución implantados en la agencia.

"(h) Acuerdo entre las partes." (Énfasis suplido.)

tante exclusivo, a la organización sindical que los emplea-
dos públicos elijan mediante votación. A esos fines, la pro-
pia Ley Núm. 45 faculta a la Comisión "para aprobar un
Reglamento para la elección del representante sindical en
el que se establezcan los procedimientos a ser observados
por las organizaciones obreras y los patronos". Art. 4, Sec.
4.6 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451h).

■ Con el objetivo de cumplir con las disposiciones de
la Ley Núm. 45, el 28 de diciembre de 2001 la Comisión
aprobó el Reglamento Núm. 6385, el cual contiene disposi-
ciones para reglamentar los procedimientos de representa-
ción, entre otras. Conforme a ello, el procedimiento de re-
presentación se inicia con la presentación de una *petición*
de parte de una organización sindical, solicitando una elec-
ción para escoger un representante exclusivo. Véase Sec.
300 del Reglamento de la Comisión de Relaciones del Tra-
bajo del Servicio Público, Reglamento Núm. 6385 de 28 de
diciembre de 2001 (Reglamento Núm. 6385). Dicha peti-
ción tiene que cumplir con todos los requisitos
reglamentarios. Véase Sec. 302 del Reglamento Núm.
6385, ante.

■ Luego de presentada la petición, la Comisión no-
tificará a las partes para que comparezcan ante uno de sus
agentes y puedan discutir y estipular las controversias so-
bre el alcance y la composición de las unidades
apropiadas.[11] Si la controversia subsiste, la Comisión po-
drá ordenar la celebración de una Sesión Especial para la
Determinación de Unidades Apropiadas.[12] En dicha Se-
sión las partes tendrán el derecho de presentar evidencia
ante la Comisión sobre cómo debe quedar establecida la
unidad apropiada.[13]

---

[11] Sec. 305(B) del Reglamento de la Comisión de Relaciones del Trabajo del
Servicio Público, Reglamento Núm. 6385 de 28 de diciembre de 2001 (Reglamento
Núm. 6385).

[12] Íd.

[13] Resulta importante señalar que la Sec. 309(B) del Reglamento Núm. 6385
dispone que "[l]as Sesiones Especiales para la Determinación de Unidades Apropia-

Las sesiones especiales serán públicas y comenzarán con una exposición oral de cada parte sobre cómo debe quedar constituida la unidad apropiada.([14]) Luego de celebrada la Sesión Especial, las partes podrán someter sus alegatos dentro del término que les conceda la Comisión.([15]) Luego que la Comisión haya obtenido toda la evidencia pertinente y cuente con las posiciones expresadas por las partes, entonces determinará cuál será la unidad apropiada y ordenará la celebración de una elección. Una vez la Comisión le notifique a las partes la Determinación de Unidad Apropiada, éstos tendrán catorce días para presentar sus excepciones.([16]) Luego de celebrada la elección, y si no hay objeciones, la Comisión emitirá una Certificación de Representante Exclusivo, y ordenará el cierre y archivo del caso.([17])

## II

Por otro lado, la Ley Núm. 45 establece el ámbito de la revisión judicial de las decisiones emitidas por la Comisión. De esta manera, el referido estatuto establece, en el Art. 6, Sec. 6.1(g), 3 L.P.R.A. sec. 1451p(g), la revisión judicial de laudos de arbitraje;([18]) en el Art. 9, Sec. 9.3(j) (3 L.P.R.A. sec. 1452c(j), la revisión de las determinaciones en las que se adjudican las controversias sobre prácticas ilíci-

---

das *se considerarán como procedimientos investigativos y no adversativos."* (Énfasis suplido.)

([14]) Sec. 309(D) del Reglamento Núm. 6385.

([15]) Sec. 309(G) del Reglamento Núm. 6385.

([16]) Sec. 309(H) del Reglamento Núm. 6385.

([17]) Sec. 316 del Reglamento Núm. 6385.

([18]) La referida sección dispone:

"(g) La decisión o laudo del panel será final y firme conforme a derecho y deberá ajustarse a los parámetros contenidos en la Sección 5.2 de esta Ley. Solamente podrán impugnarse los laudos de arbitraje por errores de derecho y aquellos que sean contrarios a la disposición constitucional que prohíbe que las asignaciones hechas para un año económico excedan los recursos totales calculados para dicho año, mediante acción judicial ante el Tribunal de Circuito de Apelaciones el cual deberá actuar en torno a la misma dentro de un término no mayor de treinta (30) días."

tas,([19]) y por último, en el Art. 10, Sec. 10.1 (3 L.P.R.A. sec. 1452d), la revisión de órdenes y resoluciones finales de la Comisión.([20]) En específico, *y en lo que respecta a la controversia hoy ante nuestra consideración*, el Art. 10, Sec. 10.1 de la Ley Núm. 45, ante, dispone, en lo pertinente, que:

> El Tribunal de Circuito de Apelaciones, a solicitud de parte, tendrá jurisdicción para entender discrecionalmente en los recursos de revisión de *órdenes y resoluciones finales* de la Comisión según los términos que dispone [la sec.] 2101 et seq. de este título, conocidas como "Ley de Procedimiento Administrativo Uniforme". Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan. (Énfasis suplido.)

Conforme a la referida disposición estatutaria, el Tribunal de Apelaciones podrá revisar las determinaciones de la Comisión *que sean órdenes o resoluciones finales según las disposiciones de la L.P.A.U.* En virtud de lo anterior, debemos examinar las disposiciones de la L.P.A.U, y su jurisprudencia interpretativa, para determinar cuáles son las órdenes o resoluciones finales que el Tribunal de Apelaciones puede revisar.

En referencia a la revisión judicial de las decisiones administrativas, la Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar un recurso de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la *orden o resolución*

---

[19] La referida sección dispone, en lo pertinente:

"(j) Cualquier parte adversamente afectada por una orden final de la Comisión podrá solicitar revisión de la misma ante el [T]ribunal de Circuito de Apelaciones, radicando en dicho tribunal una petición escrita solicitando que la orden de la Comisión sea modificada o revocada. La solicitud de revisión deberá ser radicada dentro del término de treinta (30) días a partir de la fecha en que la orden advino final."

[20] Cabe destacar que en la Ley Núm. 45 no hay disposición específica sobre la revisión judicial de las determinaciones que haga la Comisión sobre unidad apropiada.

*final* de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título, cuando el término para instar el recurso de revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación del recurso de revisión a la agencia y a todas las partes dentro del término para instar el recurso de revisión. La notificación podrá hacerse por correo. (Énfasis suplido.)

De lo antes expuesto se puede colegir que son dos los requisitos para que el Tribunal de Apelaciones revise una orden o resolución emitida por una agencia: (i) que la parte adversamente afectada por la orden o resolución haya agotado los remedios provistos por la agencia,[21] y (ii) *que la orden o resolución sea final, y no interlocutoria.*[22] Véanse: *Procuradora Paciente v. MCS*, 163 D.P.R. 21 (2004); *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483 (1997).

La L.P.A.U. define "orden o resolución" como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas ...". 3 L.P.R.A. sec. 2102(f). De igual manera, define de forma general dos clases de órdenes o resoluciones: las parciales y las interlocutorias.

La Sec. 1.3(g) de la L.P.A.U. define la "orden o resolución parcial" como aquella "acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma". 3 L.P.R.A. sec. 2102(g). De igual forma, define una

[21] La doctrina de agotamiento de remedios administrativos recogida en la Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2172, constituye una norma de abstención judicial, cuyo propósito es evitar que las reclamaciones presentadas ante una agencia administrativa lleguen al foro judicial a destiempo. *Padilla Falú v. A.V.P.*, 155 D.P.R. 183 (2001); *Igartúa de la Rosa v. A.D.T.*, 147 D.P.R. 318 (1998).

[22] Hemos expresado que el requisito de finalidad de las órdenes y resoluciones tiene un alcance análogo a la doctrina de agotamiento de remedios y que, de ordinario, ambas gozan de las mismas excepciones. *Procuradora Paciente v. MCS*, 163 D.P.R. 21 (2004); *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483 (1997). En virtud de ello, una resolución interlocutoria es revisable en casos excepcionales, o sea, se puede preterir el trámite administrativo cuando la agencia claramente carece de jurisdicción y la posposición conlleva un daño irreparable al afectado. *Íd.*

"orden interlocutoria" como "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". 3 L.P.R.A. sec. 2102(h).

No obstante, la L.P.A.U. *no* define el término "orden o resolución final". A pesar de ello, la ley contiene una descripción de lo que tiene que incluir una orden o resolución final; esto es, requiere que incluya unas determinaciones de hecho, las conclusiones de derecho de la decisión, una advertencia sobre el derecho a solicitar una reconsideración o revisión judicial, según sea el caso, y la firma del jefe de la agencia o de cualquier otro funcionario autorizado por ley. 3 L.P.R.A. sec. 2164.

Asimismo, hemos expresado que *la orden o resolución final es aquella que pone fin a todas las controversias dilucidadas ante la agencia* y cuyo efecto es sustancial sobre las partes. *Tosado v. A.E.E.*, 165 D.P.R. 377 (2005); *Padilla Falú v. A.V.P.*, 155 D.P.R. 183 (2001); *J. Exam. Tec. Méd. v. Elías et al.*, ante.[23] De acuerdo con lo anterior, los tribunales se abstendrán de evaluar la actuación de la agencia hasta tanto la persona o junta que dirija esa entidad resuelva la controversia en su totalidad.

## III

En el presente caso, el Tribunal de Apelaciones desestimó el recurso de revisión de decisión administrativa por falta de jurisdicción, fundamentando su determinación en que, utilizando por analogía la Ley de Relaciones del Tra-

---

[23] Respecto a este asunto, nos señala el Prof. Demetrio Fernández Quiñones lo siguiente:

"Una vez el organismo administrativo ha rendido su decisión en el caso y la 'parte adversamente afectada' ha agotado todos los remedios administrativos disponibles dentro del organismo, se puede presentar la solicitud de la revisión judicial. ... Para interponer el recurso, la decisión administrativa tiene que ser 'final' y además debe ser revisable. *La decisión administrativa es final cuando ha decidido todas las controversias y no deja pendiente ninguna para ser decidida en el futuro.* Es revisable cuando la parte afectada por ella haya cumplido con todos los requisitos y haya agotado todos los remedios administrativos disponibles." (Énfasis suplido.) D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, Sec. 9.3, pág. 533.

bajo para el Servicio Público de Puerto Rico, las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de práctica ilícita. Señaló, además, que la determinación de unidad apropiada hecha por la Comisión no es revisable, ya que esa decisión no es una acción administrativa que adjudique algún derecho u obligación y, además, que no es una orden o resolución final, porque las partes tienen la oportunidad de presentar ante la Comisión una petición de clarificación de unidad apropiada. *Erró al así hacerlo.*

■ Debemos señalar, en primer lugar, que en este caso *no* se debe utilizar por analogía la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico. Reconocemos que la Ley Núm. 45 contiene disposiciones muy similares a las de aquélla, y que las funciones y los deberes de la Junta de Relaciones del Trabajo de Puerto Rico comparan sustancialmente con las de la Comisión. *No obstante, el ámbito de revisión judicial de la Ley Núm. 45 es distinto al de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico.* Veamos.

La Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, en su Art. 5(3), 29 L.P.R.A. sec. 66(3), dispone que

> ... [l]as conclusiones de la Junta, el procedimiento electoral, la resolución de la controversia relativa a la representación, *la determinación de la unidad* y el certificado del resultado de cualquier elección así llevada a cabo, *serán finales y estarán sujetos a revisión judicial sólo de la manera que se dispone en el inciso (4) de esta sección.* (Énfasis suplido.)

A su vez, el inciso (4) de su Art. 5 dispone que

> ... [s]iempre que una orden de la Junta *dictada de acuerdo con la sec. 70 de este título* se base, en todo o en parte, en hechos certificados después de una investigación o audiencia pública efectuada de acuerdo con el inciso (3) de esta sección, y exista una petición para que se ponga en vigor dicha orden y para que se revise, la certificación y el expediente de la investigación o audiencia efectuada de acuerdo con el inciso (3) de esta sección se incluirán en la transcripción del expediente

completo que ha de presentarse de acuerdo con la sec. 70 de este título y entonces el decreto del tribunal, poniendo en vigor, modificando o anulando en todo o en parte la orden de la Junta, se hará y se expedirá a base de los autos, el testimonio y los procedimientos expuestos en dicha transcripción. (Énfasis suplido.) 29 L.P.R.A. sec. 66(4).

Por otro lado, *el Art. 9(2)* de la Ley Núm. 130, *supra*, 29 L.P.R.A. sec. 70(2), dispone, en parte, *sobre el procedimiento de práctica ilícita que*

[c]ualquier persona perjudicada por una orden final de la Junta concediendo o negando, en todo o en parte, el remedio que se interesa, podrá obtener la revisión de dicha orden en el Tribunal Supremo de Puerto Rico, radicando en dicho tribunal una petición escrita suplicando que la orden de la Junta sea modificada o revocada.

Este Tribunal ha resuelto que de una lectura conjunta de los incisos (3) y (4) del Art. 5 de la Ley de Relaciones del Trabajo de Puerto Rico, ante, y de su Art. 9, ante, se infiere que la intervención judicial con respecto a las decisiones que emite la Junta se da en virtud de la facultad revisora del tribunal *y que ésta, a su vez, sólo puede ejercitarse una vez la Junta ha emitido una decisión final sobre una práctica ilícita del trabajo.* Dicho de otra manera, hemos resuelto que las decisiones y órdenes dimanantes de casos de representación sólo son revisables mediante un ataque colateral imbricado en una decisión relativa a alguna práctica ilícita. *J.R.T. v. A.M.A.*, 119 D.P.R. 94 (1987). Este esquema de revisión lo incorporamos a nuestro entorno jurídico de la jurisdicción federal. Véase, además, *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 D.P.R. 335, 349 (1994).

Es de notar que, a diferencia de la Ley de Relaciones del Trabajo de Puerto Rico, la cual de ordinario limita la revisión judicial a aquellas instancias en que la Junta de Relaciones del Trabajo ha emitido una decisión final sobre una práctica ilícita del trabajo, *la Ley Núm. 45 expresamente establece una revisión directa al foro apelativo intermedio de todas las órdenes y resoluciones finales*

*de la Comisión, ello conforme a las disposiciones de la L.P.A.U.*

## IV

En virtud de lo anteriormente expuesto, en el presente caso debemos determinar si la resolución que emitió el 24 de julio de 2002 la Comisión, en la que resolvió las excepciones presentadas por A.R.Pe. sobre unidad apropiada, *constituye o no una orden o resolución final conforme a las disposiciones de la L.P.A.U. y, por lo tanto, revisable por el foro apelativo intermedio.*

Ahora bien, al analizar la naturaleza de la referida decisión administrativa, es decir, si es final o interlocutoria, no podemos considerar, exclusivamente, la denominación que le ha dado la agencia que la emite dentro del esquema procesal administrativo. Es decir, no es el nombre lo que determina si una orden o resolución es final o interlocutoria. Es necesario considerar detenidamente los elementos de la decisión para determinar si, dado el estado de derecho vigente al momento del procedimiento administrativo, la decisión que se pretende revisar judicialmente constituye una orden o resolución final o interlocutoria.

En el presente caso, el 15 de febrero de 2002, luego de haber celebrado una Sesión Especial, donde tanto A.R.Pe. como la C.U.T.E. presentaron evidencia, la Comisión emitió una Determinación sobre Unidad Apropiada. Inconforme con esta determinación sobre unidad apropiada, A.R.Pe. presentó dentro del término reglamentario sus excepciones, para solicitar que varios puestos fueran excluidos de ésta.

La Comisión ordenó una elección que se celebró el 26 de marzo de 2002; ello no obstante, la Comisión recusó los votos que emitieron los empleados que integraban los puestos que A.R.Pe. solicitó que fueran excluidos, mientras se resolvía la moción con las excepciones. Luego de celebrada la elección, la Comisión certificó a la C.U.T.E. como

el representante exclusivo de los integrantes de la unidad apropiada el 17 de abril de 2002, debido a que el número de votos recusados no eran suficientes para afectar el resultado de la elección. El 24 de julio de 2004 la Comisión resolvió, finalmente, las excepciones presentadas por A.R.Pe., manteniendo la inclusión dentro de la unidad apropiada de los puestos impugnados.

De entrada debemos señalar que no compartimos el criterio del Tribunal de Apelaciones, a los efectos de que la determinación sobre unidad apropiada no es una decisión revisable judicialmente, por no ser una acción administrativa que adjudique algún derecho u obligación.

La L.P.A.U. define *adjudicación* como "el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte". 3 L.P.R.A. sec. 2102(b). *Así pues, la configuración de la unidad apropiada y la determinación de si un puesto forma parte de ella, constituye a nuestro juicio una adjudicación para efectos de la L.P.A.U.*

No se debe pasar por alto que, mediante la determinación sobre unidad apropiada, la Comisión les reconoce *derechos sustantivos* a los empleados públicos, en tanto les otorga el derecho a la negociación colectiva. De igual manera, esa determinación le impone la *obligación* al patrono, en este caso A.R.Pe., de negociar con los empleados públicos, a través de su representante exclusivo, los términos y las condiciones de empleo de todos los empleados incluidos en la unidad apropiada. *Por lo tanto, resulta evidente que la configuración de la unidad apropiada es determinante en el ejercicio de los derechos y las obligaciones de los empleados y patronos en el marco de las relaciones laborales.*

El hecho de que las Sesiones Especiales sobre determinación de unidades apropiadas hayan sido denominadas por la Comisión en su reglamento como procedimientos investigativos y no adversativos,[24] *no altera la*

---

[24] Sec. 310 del Reglamento Núm. 6385 de la Comisión.

*realidad de que una vez culminada esa faceta, la Comisión adjudica los derechos de las partes.*([25]) Resolver lo contrario implicaría que cualquier agencia, sometida a la L.P.A.U., podría inmunizar sus adjudicaciones con el mero hecho de denominar un procedimiento como investigativo. Evidentemente, esa conclusión o situación *no* se puede sostener.

Asimismo, entendemos que la determinación de unidad apropiada de la Comisión en este caso *es una resolución final*, ya que conforme a la L.P.A.U. y su jurisprudencia, *la resolución puso fin a todas las controversias dilucidadas ante la agencia y su efecto es sustancial sobre las partes.*([26])

En este caso la resolución sobre unidad apropiada *cumple* con los requisitos de la L.P.A.U., ya que incluye determinaciones de hecho y conclusiones de derecho; además, fue firmada por el Presidente de la Comisión. De igual manera, una vez la Comisión emitió la resolución recurrida —el 24 de julio de 2002— *no quedaba asunto pendiente alguno que resolver,* ya que ese organismo llevó a cabo el proceso eleccionario y certificó al representante de la negociación colectiva, que es la recurrida C.U.T.E. *La Comisión emitió una determinación, con carácter final y no interlocutorio, de lo que constituyen los derechos sustantivos de las partes, por lo que el recurso de revisión debe estar disponible para acudir en alzada.* Esta determinación no sólo excluye o incluye puestos de la unidad apropiada, estable-

---

([25]) Debemos señalar que conforme con el reglamento de la Comisión, la Sesión Especial para determinación de unidad apropiada reúne los elementos de un procedimiento de adjudicación, ya que en ese procedimiento se le permite a las partes presentar prueba, tanto documental como testifical; cada parte tendrá derecho a hacer una exposición oral, y podrá presentar alegatos para sostener sus respectivas posiciones. Incluso así lo reconoce la propia Comisión en la resolución inicial sobre unidad apropiada de 15 de febrero de 2002 en donde expresó:

"Las partes tuvieron amplia oportunidad de presentar sus respectivas posiciones y someter toda la evidencia documental y testifical pertinente en apoyo a las mismas. Además, al concluir la Sesión Especial se les concedió un plazo de catorce días para la radicación de alegatos, si así lo interesaban."

([26]) Cabe destacar, de igual forma, que en este caso se cumplió con el requisito de agotar los remedios administrativos, ya que A.R.Pe. presentó las excepciones a la determinación sobre unidad apropiada dentro del término reglamentario de catorce días, y luego que la Comisión emitiera la resolución en la que resolvía esas excepciones, presentó oportunamente una moción de reconsideración conforme con la L.P.A.U. Véase 3 L.P.R.A. sec. 2165.

ciendo qué empleados tendrán derecho a la negociación colectiva, *sino que desde el punto de vista de A.R.Pe.*, se emite un pronunciamiento final que altera sustancialmente las relaciones laborales en esa entidad gubernamental.

En conclusión, *y de acuerdo con la L.P.A.U.*, estamos propiamente ante una *resolución final* que adjudica derechos y obligaciones de las partes, por lo que la revisión judicial *debe estar* disponible ante el Tribunal de Apelaciones.

## V

Por los fundamentos antes expuestos, *procede revocar la resolución emitida por el Tribunal de Apelaciones y se devuelve el caso a ese foro para procedimientos ulteriores compatibles con lo aquí resuelto.*

*Se dictará Sentencia de conformidad.*