ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| DEL MAR ENTERPRISE, INC.<br><br>Recurrente<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PR<br><br>Recurridos | KLRA202400325 | *Revisión Administrativa* procedente de la Secretaria de Vistas Administrativas de la Autoridad de Acueductos y Alcantarillados<br><br>Caso Núm.: AA-20-017<br><br>Sobre: Vista Administrativa |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparece Del Mar Enterprise, Inc. (Del Mar Enterprise; recurrente) mediante un recurso de revisión judicial sobre una *Resolución Final*, emitida el 26 de marzo de 2024 y notificada el siguiente día. Mediante esta, la Autoridad de Acueductos y Alcantarillados (AAA; recurrida) declaró No Ha Lugar una querella presentada por la recurrente.

Adelantamos que, por los fundamentos que exponemos a continuación, se desestima el dictamen recurrido.

**I**

Se desprende del expediente del caso de epígrafe que Del Mar Enterprise sometió un procedimiento administrativo ante la AAA de impugnación de las facturas de consumo de agua con fecha del 7 de agosto de 2020 por la cantidad de $7,802.78 y del 8 de septiembre de 2020 por la cantidad de $8,750.60.[1]

Luego de varios trámites procesales, se celebraron las vistas administrativas en su fondo el 28 de septiembre de 2023 y el 4 de diciembre

---

[1] Apéndice del recurso, págs. 1-7. Véase, además, *Revisión Judicial*, pág. 3 y *Alegato en Oposición de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, pág. 3.

de 2023.[2] Así las cosas, el 26 de marzo de 2024, notificada el siguiente día, la AAA emitió una *Resolución Final*.[3] Según la *Resolución Final*, la prueba documental y demostrativa de la AAA consistió en la siguiente:

> Exhibit 1 - Historial de facturación, pagos y balances, 8 folios.
> Exhibit 2 - Historial de facturación, 3 folios.
> Exhibit 3 - Factura: agosto y septiembre de 2020, 2 folios.
> Exhibit 4 - Fotos lecturas y orden de investigaciones, 8 folios.
> Exhibit 5 - Foto contadores, lecturas tomadas, locales comerciales existentes en el lugar.
> Exhibit 6 - Contrastación fechada 21 de octubre de 2021.
> Exhibit 7 - Cartas generadas por la Autoridad:
> a. 2 de septiembre de 2020.
> b. 28 de septiembre de 2020.
> c. 26 de octubre de 2020.
> d. Envío carta con imagen.
> e. Carta fechada 11 de diciembre de 2020.
> Exhibit 8 - Narrativo de la Investigación realizada 13 de abril de 2023.
> Exhibit 9 - Video.

> Por su parte, la prueba documental y demostrativa de Del Mar Enterprise consistió en la siguiente:

> Exhibit A - Certificación Maestro Plomero fechada 6 de mayo de 2021.
> Exhibit B - Informe de prueba de presión realizada por Maestro Plomero fechada 24 de junio de 2021.
> Exhibit C - Declaración jurada de Héctor Nieves Quiñones, contratista.
> Exhibit D - Informe pericial por Ing. Carlos Alberto García Sotero fechada 5 de octubre de 2021.
> Exhibit E - Permiso de uso del edificio, 2009 contiene currículo/ perito.
> Exhibit F - Dos (2) facturas en controversia:
> Exhibit G1 - Video, 15 de abril de 2023.
> Exhibit G2 - Video, 15 de abril de 2023.

> Las partes estipularon como prueba conjunta la siguiente:

> Exhibit 3 - Factura: agosto y septiembre de 2020, 2 folios.
> Exhibit 6 - Contrastación fechada 21 de octubre de 2021, fotos informe final.

> La prueba testifical de la Autoridad consistió en el testimonio bajo juramento del Sr. Roberto Ramos Blanco, gerente, Oficina Servicios al Cliente, División Condominios, Grandes Clientes y Cuentas Consolidadas, Región Oeste.

> Por otro lado, [Del Mar Enterprise] presentó varios testigos, a saber: Sr. Martin Rivera Morales, Maestro Plomero; Sr. Héctor Nieves Quiñones, Contratista; Ing. Carlos A. García Sotelo; Sr. Noel Caban Avilés, Representante Servicios al Cliente de la Autoridad; Sr. Roberto Nazario Ramírez,

---

[2] Apéndice del recurso, págs. 1-7.
[3] *Id.*

Supervisor Servicio al Cliente de la Autoridad; Sr. Edgardo L. Delgado Colón, Presidente de Del Mar Enterprises, Inc.

Luego de considerada la prueba documental y testifical presentada por las partes, la AAA emitió las siguientes determinaciones de hechos:

1. Las facturas objeto de consideración en este caso son las antes descritas.

2. El Sr. Roberto Ramos Blanco, gerente, Oficina Servicios al Cliente, División Condominios, Grandes Clientes y Cuentas Consolidadas, Región Oeste, expuso que en su capacidad como gerente le correspondía realizar una investigación sobre la solicitud de la querellante a los fines de determinar la corrección de las facturas objetadas.

3. Testificó el Sr. Ramos Blanco que participó en la prueba de contrastación del contador de la querellante y el resultado fue que el mismo estaba bien, registrando los consumos correctos.

4. También expuso dicho testigo que se realizaron varias investigaciones del área del contador y que no se encontró perdida y/o salidero atribuible a la Autoridad. Además, que se corroboró que las lecturas del contador concordaban con lo facturado, por lo que no procedía ajuste a los cargos.

5. Por otra parte, declaró el Sr. Ramos Bianco que en visita que hizo con otros supervisores de la Autoridad al área de los contadores de la querellante se encontró una interconexión fuera del área que es responsable la Autoridad. Esta evidenciaba un retroceso de agua a la caja número 7, que no tenía un contador y pertenece a la querellante. Este describió que hay una línea de tubería de agua que est[á] conectada al contador y posterior una llave de paso conectada con la tubería de la referida caja número 7. Expuso que se trata de una derivación no autorizada por la Autoridad.

6. El video que las partes ofrecieron en evidencia y que pudimos observar se aprecia el agua saliendo de la referida caja número 7. Además, que el contador registraba el consumo.

7. Las fotografías sometidas en evidencia reflejan 12 cajas, pero según declarado por los testigos, lo que no est[á] en controversia, no todas tenían servicio con la Autoridad ya que no habían abierto cuenta para ello, ni tenían contadores.

8. También, expuso el Sr. Ramos Bianco que los oficiales de la Autoridad que toman las lecturas de los contadores solamente verifican aquellas cajas que tienen contadores registrados, con sus respectivas cuentas. No tienen que ver las cajas donde no hay contador ni cuenta registrada con la Autoridad.

9. Por otra parte, qued[ó] establecido que para el edificio se instalaron doce (12) cajas y que de estas solo cuatro (4) tienen contadores, una de estas para el área común, que

es la que corresponde a los cargos objetados bajo consideración.

10. Tanto el testigo de la Autoridad, como los de la querellante, Sr. Martin Rivera Morales, Maestro Plomero; Sr. Héctor Nieves Quiñones, Contratista; Ing. Carlos A. García Sotelo; Sr. Noel Cabán Avilés, Representante Servicios al Cliente de la Autoridad y Sr. Roberto Nazario Ramírez; Supervisor Servicio al Cliente de la Autoridad, atestiguaron que el agua que retornaba a la caja vacía, sin contador, se debió a la referida interconexión o derivación para darle servicio de agua a otra área del edificio o facilidad de la querellante. El agua era controlada con una llave de paso que al mantenerse cerrada el agua solo fluía hacia las otras facilidades, no en retroceso. Pero si se abría, el agua discurría, hacia la caja vacía.

11. El testigo perito de la querellante, Ing. Carlos A. García Sotelo declaró que la pérdida de agua, en su opinión, era responsabilidad de la Autoridad y no atribuible a la querellante bajo el fundamento que esta no tom[ó] las previsiones necesarias para evitar la pérdida de agua toda vez que los funcionarios debían percatarse de la situación.

12. También, el testigo de la querellante, Sr. Héctor Nieves Quiñones, contratista, declaró que ha dado servicio en el edificio Plaza Del Mar y que a petición del Sr. Edgardo Delgado investigó el alto consumo y que luego de verificar no había salidero, busc[ó] las llaves de paso y encontró que la llave de la caja número 7 estaba abierta botando agua en grandes cantidades que discurría hacía debajo de dicha caja. Además, reconoció que no era visible desde afuera el agua discurriendo a la referida caja.

13. El Sr. Edgardo Delgado declaró que se percató del alto consumo por las facturas; que el edificio está abierto desde el 2019 y nunca habla ocurrido lo antes descrito. Expuso, además, que en los primeros dos pisos hay dos inquilinos. También, testificó que esa llave de paso antes descrita fue eliminada al seguir las facturas. Finalmente, mencionó que en este caso hubo un incumplimiento del deber por parte de la Autoridad bajo el supuesto de [que] los funcionarios debían percatarse de la situación al pasar a leer los contadores.

14. De acuerdo al historial de consumo de la querellante, las facturas en controversia son sustancialmente mayores a las que siempre ha mantenido ésta.

15. Finalmente, quedó establecido por lo declarado por el Sr. Ramos Bianco que construir o -instalar- la referida derivación no fue [instalada] por la Autoridad, ni autorizada por ésta. Su utilidad era para uso de la querellante. También, en el Informe Pericial del Ing. Carlos Alberto García Toledo, se hace constar que el presidente de la corporación, Sr. Delgado Colón, le informó que, para el mes de junio de 2019, se unieron las líneas de las dos plumas existentes con el área dedicada a las facilidades comunes.

Ante esto, la AAA llegó a las siguientes conclusiones de derecho y declaró No Ha Lugar la querella presentada por Del Mar Enterprise:

A la luz de los hechos antes determinados resulta evidente que el consumo excesivo de agua comparativo con periodos anteriores se debió a lo que se describe previamente. Tomando como base ello, también resulta indiscutible que la Autoridad no fue la que construyó o instaló la tubería de desvío de agua del contador para ser utilizada en otra área o facilidad de la querellante. Por el contrario, fue dicha parte quien realizó los trabajos sin la autorización de la Autoridad.

Por otro lado, no está en controversia que el contador registró correctamente el consumo facturado, del cual es responsable la querellante.

También, procede que se establezca, según la prueba presentada, que la Autoridad no tenía responsabilidad de verificar aquellas cajas que estaban vacías al cual precisamente el agua discurría. No se trata de una situación que los funcionarios o lectores de la Autoridad se percataban, pues solamente atendían aquellas cajas con contadores y que existía una cuenta con ésta. Por ende, no procede atribuirle responsabilidad a la Autoridad por la situación, bajo la premisa que se debió haber dada cuenta de lo que estaba sucediendo.

Finalmente, aduce la querellante que alguien mal intencionado abrió la llave que instaló dicha parte para que el agua discurriera hacia la caja vacía en lugar de seguir a otras facilidades de dicha parte. La realidad es que no es un asunto que le competa a la Autoridad y quien tiene que acarrear la responsabilidad es la querellante.

El 16 de abril de 2024, Del Mar Enterprise presentó una *Moción de Reconsideración*[4] ante la AAA a la cual se opuso esta última mediante su *Moción en Oposición a Solicitud de Reconsideración.*[5] No obstante, la AAA se sostuvo en su determinación original.[6]

Inconforme con dicha determinación, el 21 de junio de 2024, Del Mar Enterprise acudió ante este Tribunal de Apelaciones a través del recurso de revisión judicial que aquí nos ocupa. A través de este le imputó a la AAA la comisión de los siguientes errores:

**Primer Error:** Erró la AAA al emitir una Resolución Final defectuosa, incorrecta e inadecuada carente de todos los requisitos contemplados en la LPAU, lo cual trajo como consecuencia una notificación defectuosa que no activó los t[é]rminos para solicitar reconsideración ni revisión judicial.

**Segundo Error:** Erró la AAA al emitir determinaciones de hechos arbitrarias y parcializadas a la propia agencia, en

---

[4] Apéndice del recurso, págs. 8-22.
[5] Apéndice del recurso, págs. 100-108.
[6] Apéndice del recurso, págs. 109- 110.

contravención a la prueba testifical vertida en la vista adjudicativa.

**Tercer Error:** Erró la AAA al concluir que el consumo excesivo se debió a causas atribuibles a la parte recurrente en contravención a la prueba documental, testifical y digital vertida en la vista administrativa.

El mismo día, Del Mar Enterprise sometió una *Moción para Presentación de Transcripción de Prueba Oral*. De este modo, el 1 de julio de 2024 emitimos una *Resolución* en la cual concedimos hasta el 22 de julio de 2024 para que la AAA presentara su alegato. Igualmente, concedimos hasta el 30 de agosto de 2024 para que Del Mar Enterprise elevara la transcripción estipulada de la prueba oral.

Luego de la concesión de prórroga, el 6 de agosto de 2024, la AAA presentó su alegato en oposición. Por otro lado, el 29 de agosto de 2024, Del Mar Enterprise presentó la transcripción oral estipulada.

Contamos con el beneficio de ambas partes, por lo que procedemos a resolver el recurso ante nuestra consideración.

**II**

**A.**

La Sección 1.3 (g) de la Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme* (LPAU), según enmendada, define orden o resolución como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador." 3 LPRA sec. 9603. Ahora bien, la LPAU, *supra*, no contienen una definición de resolución final, la cual es necesaria para determinar cuándo concluye el proceso administrativo y así, el comienzo de los plazos para solicitar reconsideración y revisión judicial. M. Izquierdo Encarnación, *Introducción al Derecho Administrativo*, 5ta ed., San Juan, Ed. Situm, 2020, pág.202.

No obstante, el Tribunal Supremo de Puerto Rico ha señalado que una orden o resolución final es "aquella determinación de la agencia

administrativa que pone fin a los procedimientos en un foro determinado y tiene un efecto sustancial para las partes." *AAA v. UIA*, 200 DPR 903, 912–913 (2018). De igual modo, nuestro Tribunal Supremo ha establecido ciertos elementos para determinar si la agencia ha adjudicado definitivamente el caso ante su consideración. Así pues, el Tribunal Supremo ha señalado que una orden o resolución final debe contener los siguientes elementos: 1) determinaciones de hecho; 2) **conclusiones de derecho**; y 3) advertencia sobre el derecho a solicitar reconsideración o revisión judicial. *A.R.Pe v. Coordinadora*, 165 DPR 850 (2005). La falta de algunos de estos elementos puede privar al tribunal revisor de jurisdicción. *Comisionado Seguros v. Universal*, 167 DPR 21, 30 (2006).

Igualmente, la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, contiene los elementos básicos que debe contener una orden o resolución de una agencia administativa. En lo pertinente, la referida sección establece que:

> **La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación**, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley. (Énfasis nuestro). *Id.*

En cuanto a las determinaciones de hechos, estas estarán fundamentadas con la prueba presentada ante la agencia. D. Fernández Quiñonez, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013. De otro parte, en cuanto a las conclusiones de derecho, **habrá que determinar las disposiciones legales aplicables y proceder a aplicarlas a los hechos**. *Id.* **Las últimas dos exigen que se determine y analice el derecho aplicable**. *Id.* Asimismo, las determinaciones de hechos y de derecho no pueden ser *proforma*, por lo que exigen un análisis y evaluación juiciosa del caso. *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950, 962 (2007); J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed., San Juan, Ed. SITUM, 2023, pág. 251. No pueden limitarse a recitar o parafrasear las

leyes y los reglamentos aplicables. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 152 (1998).

La obligación de las agencias administrativas de fundamentar sus decisiones con determinaciones de hecho y de derecho están fundamentadas en el debido proceso de ley. Echevarría Vargas, *op. cit.*, pág. 251. Además, este requisito persigue varios propósitos: 1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; 2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; 3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, permitiéndole decidir de manera informada si acude al foro judicial o acata la determinación de la agencia; 4) promover la uniformidad interagencial; 5) evitar que los tribunales se apropien de funciones que les corresponden a las agencias administrativas bajo su *expertise*. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 276 (1987); Echevarría Vargas, *op. cit.*, págs. 251-252.

En cuanto al requisito de las determinaciones de derecho, el Tribunal Supremo ha expresado lo siguiente:

> Por otra parte, la Junta debió exponer las razones o fundamentos de derecho que sirvieron de base a su decisión. **De otro modo, es obvio que toda revisión judicial sería imposible**. Como dijimos en el caso de Godreau, *supra*: "... no bastan un récord de la prueba **más una simple decisión**. Solamente si [el organismo administrativo] ... llega a conclusiones sobre hechos básicos o intermedios y definitivos, es que están las cortes en posición de determinar si la resolución ... 'es o no razonable y de acuerdo con la ley'. Las conclusiones deben ser lo suficientemente definidas y ciertas para poner a las cortes en posición de revisar la decisión y determinar si los hechos tal y como los encontró probados [el organismo administrativo] ofrecen una base razonable para tal resolución." *López v. Junta Planificación*, 80 DPR 646, 667–668 (1958).

Por otro lado, las determinaciones de hechos y de derecho son necesarias para una revisión judicial adecuada. *Misión Ind. P.R. v. J.P.*, *supra*, pág. 151. Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors*, 161 DPR 69, 77-78 (2004). Igualmente, el

foro judicial deberá analizar si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba y; 3) **las conclusiones de derecho del organismo administrativo son correctas**. *P.R.T.Co. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

La norma reiterada por el Tribunal Supremo es que las decisiones de las agencias administrativas merecen una amplia deferencia judicial por la "vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado" y "deben ser respetadas a menos que la parte establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente." *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 186-187 (2009); *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

No obstante, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Los tribunales, como conocedores del derecho, no tienen que dar deferencia a las interpretaciones de derecho que hacen las agencias administrativas. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). A pesar de ello, los tribunales no pueden descartar liberalmente las conclusiones e interpretaciones de la agencia. Pero, no cabe hablar de deferencia judicial cuando la interpretación de la agencia afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de injusticias. *JP, Plaza Santa Isabel v. Cordero Badillo, supra*, pág. 187.

Por tanto, en aquellos casos donde la decisión admirativa carezca de determinaciones de hecho y conclusiones de derecho adecuadas, procede revocar dicho dictamen toda vez que no existe base alguna para efectuar una revisión inteligente y adecuada. *Misión Ind. P.R. v. J.P.*, *supra*. De igual modo, se le ha otorgado la alternativa a la agencia de presentar una resolución complementaria en el momento que se le notifique un recurso de revisión. *Id.* También, se ha devuelto el caso al foro

administrativo para que formule las determinaciones de hechos y las conclusiones de derecho que fundamenten su decisión. *Id.*

**III**

La recurrente nos plantea tres (3) señalamientos de errores. En primer lugar, señala que incidió la AAA al emitir una *Resolución Final* carente de los requisitos contemplados en la LPAU. Como segundo error, plantea que la AAA incidió al emitir determinaciones de hecho arbitrarias y parcializadas en contravención a la prueba testifical. Por último, apunta como tercer error que la AAA incidió al concluir en contravención a la prueba que el consumo excesivo se debió a causas atribuibles a Del Mar Enterprise. En esta ocasión, solo discutiremos el primer error debido a que por sí solo dispone del caso ante nuestra consideración.

Como bien reseñamos previamente, nuestro ordenamiento jurídico exige que las órdenes o resoluciones de las agencias administrativas incluyan o expongan de manera separada las determinaciones de hechos y las conclusiones de derecho que fundamentan la adjudicación. Sección 3.14 de la LPAU; *A.R.Pe v. Coordinadora*, *supra*. En cuanto a las determinaciones de hechos, deberán estar fundamentadas con la prueba presentada ante la agencia. Fernández Quiñonez, *op. cit*. De otra parte, en cuanto a las conclusiones de derecho, habrá que determinar las disposiciones legales aplicables y proceder a aplicarlas a los hechos, por lo que se deberá determinar y analizar el derecho aplicable. *Id*. Este ejercicio exige un análisis y evaluación juiciosa del caso. *Padín Medina v. Adm. Sist. Retiro*, *supra*; Echevarría Vargas, *op. cit*. No basta con una simple decisión. *López v. Junta Planificación, supra.* De este modo, estaremos en mejor posición de revisar la determinación de la agencia y la parte afectada podrá acudir ante nosotros de manera informada. Echevarría Vargas, *op. cit*.

Se deprende del caso ante nuestra consideración que la agencia realizó conclusiones de derecho sin haber citado una sola disposición de ley o reglamentaria para llegar a tales conclusiones. El ejercicio de la AAA

se quedó corto al solo recitar nuevamente las determinaciones de hecho de la *Resolución Final* y concluir sin mayor análisis del derecho aplicable. Así pues, la conclusión de derecho quedó carente determinar el derecho aplicable y su análisis para aplicarlo a los hechos del caso. Ante ese proceder, estamos impedidos de ejercer nuestra función revisora y la parte afectada no está en la mejor posición de defenderse ante nosotros.

En conclusión, la AAA debió determinar cuáles eran las disposiciones legales aplicables al caso ante su consideración y a su vez aplicarlas a los hechos del caso que sirvieron de base a su decisión. De lo contrario, es obvio que la revisión judicial sería imposible. En aras de poder ejercer nuestra función revisora de manera adecuada y el derecho que le asiste a la parte recurrente de conocer las razones que sirvieron de base a la decisión de la AAA, procede devolver el caso ante la referida agencia para que identifique las leyes y reglamentos aplicables para realizar su determinación de derecho y que de este modo las aplique a los hechos del caso.

**IV**

Por los fundamentos antes expuestos, se desestima el recurso y devolvemos el caso ante la Autoridad de Acueductos y Alcantarillados para que cumpla con lo aquí expuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Notifíquese.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones