El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar —como cuestión de umbral— si la opinión emitida por la Oficina de Ética Gubernamental en el caso de epígrafe fue pro-ducto de un proceso adjudicativo, de modo que pueda ser considerada como una orden o una resolución final revisable según las disposiciones de la Ley de Procedimiento Ad-ministrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), Ley Núm. 170 de 11 de agosto de 1988 (3 L.P.R.A. see. 2101 et seq.). Por entender que el pro-ceso mediante el cual se emitió la opinión no constituye propiamente un procedimiento adjudicativo y que, por lo tanto, no puede ser considerada para estos fines una “or-den o resolución final”, concluimos que el foro apelativo carecía de jurisdicción para revisar su corrección mediante el recurso de revisión judicial.
I
El 1 de mayo de 2006, el Director Ejecutivo de la Aso-ciación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA), Sr. Pablo Crespo Claudio, le cursó una mi-siva a la Oficina de Ética Gubernamental, indicándole que no había recibido respuesta a una comunicación enviada en el 2003. Según expuso el señor Crespo Claudio en la carta, en esa comunicación anterior éste le había manifes-tado a la Oficina de Ética Gubernamental su posición con respecto a la ausencia de autoridad de dicha agencia para requerirle —a él y a los demás funcionarios de AEELA que no son empleados públicos— rendir los informes financie- *809 ros que exige la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (Ley de Ética Gubernamen-tal), Ley Núm. 12 de 24 de julio de 1985, según enmen-dada, 3 L.P.R.A. see. 1801 et seq. En la comunicación, el señor Crespo Claudio reiteró su posición e indicó que desde entonces ha estado rindiendo los informes financieros de forma voluntaria. No obstante, aclaró que, ante la ausencia de respuesta, consideraría que la Oficina de Ética Guber-namental no pudo rebatir sus fundamentos y que, por ende, anunció qüe sólo presentaría un último informe.
En respuesta a la misiva del señor Crespo Claudio, la Directora Ejecutiva Interina de la Oficina de Ética Guber-namental, Sra. Wanda Torres Velázquez, emitió la Opinión Núm. OPC-04-002 al amparo del Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental, Oficina de Ética Gubernamental, Reglamento Núm. 5292 del Depar-tamento Estado, 18 de julio de 1995. Tras el análisis co-rrespondiente, la Oficina de Ética Gubernamental con-cluyó que los funcionarios de AEELA, incluyendo al señor Crespo Claudio, están cobijados por las disposiciones de la Ley de Ética Gubernamental. A base de ello, determinó que tanto el señor Crespo Claudio como los miembros de la Junta de Directores y demás directores de oficinas y depar-tamentos, están.obligados a rendir los informes financieros exigidos por la ley. Finalmente, le advirtió al señor Crespo Claudio de su derecho a solicitar una reconsideración o acudir directamente en revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta días a partir de la fecha del archivo en autos de la copia de la. notifica-ción de la opinión.
Inconforme, el señor Crespo Claudio presentó una mo-ción de reconsideración, reiterando su posición de que los funcionarios de AEELA que no son empleados públicos no están sujetos a las disposiciones de la Ley de Ética Guber-namental y que, por ende, no están obligados a rendir los informes financieros. El señor Crespo Claudio fundamentó su argumento, esencialmente, en que la Ley de Ética Gu- *810 bernamental no fue enmendada para incluir a los funcio-narios de AEELA y en que la Ley Núm. 123 de 11 de agosto de 1996 (Ley Núm. 123), 3 L.P.R.A. secs. 863j-863n y 862d; 26 L.P.R.A. see. 107, y 7 L.P.R.A. see. 2004, que sujeta la entidad a los poderes de la Oficina de Ética Gubernamen-tal refiere, a su vez, a las disposiciones de dicha legislación. Por lo tanto, sostiene que la legislación no tiene el alcance que le atribuye la Oficina de Ética Guberna-mental.
Tras acoger oportunamente la moción de reconsidera-ción, la Oficina de Ética Gubernamental emitió una opi-nión en reconsideración, reiterando su posición original. Al igual que en la opinión anterior, la entidad le advirtió al señor Crespo Claudio de su derecho a acudir en revisión judicial ante el Tribunal de Apelaciones.
Conforme a dichas instrucciones, y por encontrarse in-satisfecho con el dictamen, el señor Crespo Claudio acudió en revisión judicial ante el Tribunal de Apelaciones, pero también presentó una demanda de sentencia declaratoria ante el Tribunal de Primera Instancia, Sala Superior de San Juan.(1) En el recurso de revisión, el señor Crespo Claudio hizo constar que acudía ante el foro apelativo, úni-camente, porque esas fueron las instrucciones de la Oficina de Ética Gubernamental. No obstante, aclaró que —a su entender— dicho foro no poseía jurisdicción para atender la controversia mediante el mecanismo de revisión judicial, porque la opinión emitida por la Oficina de Ética Guberna-mental era meramente consultiva y no fue el resultado de un proceso adjudicativo.
Ahora bien, en consideración a la posibilidad de que el foro apelativo ejerciera jurisdicción sobre el asunto, el se-ñor Crespo Claudio señaló los errores en los que —a su juicio— incurrió la Oficina de Ética Gubernamental en la opinión objeto de escrutinio. A tales efectos, reiteró su po- *811 sición de que los funcionarios de AEELA que no son em-pleados públicos no están sujetos al poder de fiscalización y supervisión de la Oficina de Etica Gubernamental. Ello en vista de que la ley orgánica de la Oficina de Etica Guber-namental no fue enmendada para ampliar su marco de ac-ción y porque, a su entender, la Ley Núm. 123, supra, sólo pretendió sujetar a los poderes de la agencia a los emplea-dos que, de por sí, son funcionarios públicos; es decir, a los miembros de la Asamblea de Delegados y a los miembros de la Junta de Directores.
La Oficina de Etica Gubernamental, por su parte, se expresó en tomo al argumento del señor Crespo Claudio relacionado con la ausencia de jurisdicción del Tribunal de Apelaciones. En síntesis, adujo que, si bien la opinión re-currida no constituye una determinación adjudicativa formal, ésta fue producto de un proceso adjudicativo informal que, según las disposiciones de la L.P.A.U., puede ser revi-sado mediante el recurso de revisión judicial.
Tras analizar los argumentos de las partes, el Tribunal de Apelaciones resolvió que tenía jurisdicción para atender el recurso porque, "una vez se establece su posición vincu-lante en una opinión [la de la Oficina de Ética Gubernamental], ello podría afectar el proceso de adjudi-cación formal que se conduzca ante la agencia”. Apéndice de la Petición de certiorari, pág. 38. Aclarado ese aspecto, confirmó el análisis de la Oficina de Ética Gubernamental en tomo al deber del Director Ejecutivo de AEELA y de otros funcionarios de la entidad de rendir los informes fi-nancieros que exige la Ley de Ética Gubernamental.
Todavía inconforme, el señor Crespo Claudio acude ante nos y, básicamente, reproduce los mismos señalamientos que presentó ante la consideración del foro apelativo. Exa-minada la petición, acordamos expedir. Con el beneficio de la comparecencia de las partes, procedemos a resolver.
*812 II
La Ley de la Judicatura del Estado Libre Asociado de 2003, Ley Núm. 201 de 22 de agosto de 2003 (4 L.P.R.A. see. 24 et seq.), dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones, órdenes y resoluciones finales de los organismos o de las agencias administrativas conforme a lo dispuesto en la L.P.A.U. Véase Art. 4.006 (4 L.P.R.A. sec. 24y(c)). La L.P.A.U., a su vez, establece en su Sec. 4.1 que las normas relativas a la revisión judicial se extienden a todas las órdenes, resoluciones y providencias adjudicativas dictadas por las agencias administrativas que no estén expresamente exceptuadas por ley. 3 L.P.R.A. see. 2171.
En particular, la íey dispone que
[u]na parte adversamente afectada por una orden o resolu-ción final de una agencia y que haya agotado todos los reme-dios provistos por la agencia o por el organismo apelativo co-rrespondiente podrá presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia .... (Énfasis suplido.) 3 L.P.R.A. see. 2172.
El concepto “orden o resolución” mencionado en la disposición se define como cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas o que imponga penalidades o sanciones administrativas, excluyendo las órdenes ejecutivas emitidas por el Gobernador. Véase 3 L.P.R.A. sec. 2102(f). Precisamente, según la L.P.A.U., la “adjudicación” es el proceso mediante el cual la agencia determina tales derechos u obligaciones. 3 L.P.R.A. sec. 2102(b).
Ahora bien, para que una orden o resolución sea considerada final, se requiere que ésta le ponga fin al caso *813 ante la agencia y que tenga efectos sustanciales sobre las partes.(2) Comisionado Seguros v. Universal, 167 D.P.R. 21 (2006); A.R.Pe. v. Coordinadora, 165 D.P.R. 850 (2005). Además, para que dicha decisión tenga carácter de finalidad debe incluir determinaciones de hecho, conclusiones de Derecho y una advertencia sobre el derecho a solicitar una reconsideración o revisión judicial. 3 L.P.R.A. see. 2164. Igualmente, la decisión debe estar firmada por el jefe de la agencia o por un funcionario autorizado. íd.; Comisionado Seguros v. Universal, supra; A.R.Pe. v. Coordinadora, supra; Tosado v. A.E.E., 165 D.P.R. 377 (2005); Padilla Falú v. A.V.P., 155 D.P.R. 183 (2001); J. Exam. Tec. Méd. v. Elias et al., 144 D.P.R. 483 (1997).
No cabe duda de que al incorporar tales requisitos, el legislador se aseguró que la intervención judicial se reali-zara después de que concluyeran los trámites administra-tivos y se adjudicaran todas las controversias pendientes ante la agencia, de manera que no haya una intromisión de los tribunales a destiempo. Depto. Educ. v. Sindicato Puertorriqueño, 168 D.P.R. 527 (2006); Comisionado Seguros v. Universal, supra.
Ello, a su vez, es cónsono con la finalidad del requisito de madurez empleado por los tribunales como producto de la exigencia constitucional de justiciabilidad y *814 como consecuencia de la prohibición de que se emitan opi-niones consultivas.(3) Véanse: Romero Barceló v. E.L.A., 169 D.P.R. 460 (2006); Ortiz v. Panel F.E.I., 155 D.P.R. 219 (2001). Como se sabe, mediante dicha doctrina se examina la proximidad temporal o inminencia del daño alegado a través de un análisis dual: si la controversia sustantiva es apropiada para resolución judicial y si el daño es suficiente para requerir adjudicación. Al igual que con los requisitos expresamente establecidos en la L.P.A.U., con su aplica-ción los tribunales buscan proteger a las agencias y evitan interferir con sus dictámenes hasta que adquieran finali-dad y sus efectos se puedan sentir de forma concreta sobre las partes. Véanse: Abbot Laboratories v. Garner, 387 U.S. 136 (1967); Asoc. Guardias Penales v. Srio. de Justicia, 87 D.P.R. 711 (1973).(4)
En fin, de lo anterior se colige que —en consideración a las nociones básicas de justiciabilidad— mediante la aprobación de la L.P.A.U., la Asamblea Legislativa limitó la revisión judicial exclusivamente a las órdenes finales de las agencias. Es decir, nuestro sistema de derecho administrativo sujeta la aplicación de dicho recurso a la existencia de una actuación agencial final que adjudique los derechos y las obligaciones de las partes.(5)
*815 Con esto en mente, debemos resolver si el foro apelativo tenía jurisdicción para examinar —mediante el recurso de revisión judicial— la corrección de la opinión emitida en este caso por la Oficina de Etica Gubernamental. Claro está, llegar a una conclusión a esos efectos requiere, a su vez, una determinación sobre la naturaleza misma de la opinión.
III
La opinión objeto de análisis fue emitida por la Oficina de Etica Gubernamental en respuesta a una comunicación del señor Crespo Claudio, mediante la cual éste le solici-taba a la agencia una expresión en torno a la aplicabilidad de las disposiciones de la Ley de Ética Gubernamental a los funcionarios de AEELA y, en particular, sobre la ale-gada obligación de rendir informes financieros. La agencia consideró la comunicación como una “consulta”, por lo que se dispuso a “opinar” en cuanto a ésta.
Antes de pronunciar su respuesta, la Oficina de Ética Gubernamental hizo un estudio abarcador de su ley orgá-nica y del estatuto mediante el cual AEELA quedó sujeta a sus poderes de fiscalización y supervisión. Tras el análisis correspondiente, concluyó que los funcionarios de AEELA están cobijados por las disposiciones de la Ley de Ética Gubernamental y que tanto el señor Crespo Claudio como los miembros de la Junta de Directores y demás directores de oficinas y departamentos están obligados a rendir los informes financieros.
En su opinión, la Oficina de Ética Gubernamental tam-bién aclaró que lo expresado estaba fundamentado estric-tamente en los hechos particulares evaluados. A su vez, aseveró que lo expresado constituye la posición formal de la agencia y que, de haberse omitido información perti-nente, o en caso de que surgieran nuevos hechos relevan-tes, la opinión carecería de validez. Finalmente, en la opi- *816 nión aludida la Oficina de Ética Gubernamental manifestó su deseo de que la información provista pueda ser de utili-dad e instó al destinatario a comunicarse en caso de tener alguna interrogante sobre el asunto.
Un examen ponderado de. la opinión aludida nos convence de que ésta no fue producto de un proceso de adjudicación ante la agencia administrativa. Debemos recordar que la L.P.A.U. define adjudicación como el proceso mediante el cual se determinan los derechos, las obligaciones o los privilegios de las partes. Sin duda, la opinión emitida en este caso por la Oficina de Ética Gubernamental no tiene ese efecto ya que¿ mediante ésta, la agencia se limitó a realizar una interpretación de su ley orgánica y de la ley que alegadamente sujetó a AEELA a sus poderes de supervisión y fiscalización.
En esta expresión administrativa, la Oficina de Ética Gubernamental se circunscribió a clarificar los derechos y las obligaciones previamente establecidos en la ley. Aun-que parece afirmar lo contrario, la agencia hizo su inter-pretación de derecho sin aplicar la normativa correspon-diente a unos hechos particulares. Incluso, de la opinión surge que ésta no empleó un análisis particularizado de los puestos que, según el señor Crespo Claudio, debían estar exentos de la obligación de presentar los informes financieros. En su lugar, dispuso que “[p]ara determinar si un Director de Oficina o Departamento, o cualquier otro empleado de AEELA debe rendir un informe financiero, será necesario que nuestra Oficina evalúe cada caso a la luz de las siguientes disposiciones del Artículo 4.1(a) de la Ley de Ética Gubernamental”. (Énfasis suplido.)
Ciertamente, lo anterior demuestra que la Oficina de Ética Gubernamental no evaluó la controversia a base de unos hechos específicos para resolver si, en determinado momento, los funcionarios de AEELA incumplieron con las normas relativas a los informes financieros. Y es que no podía ser de otra forma, ya que —a pesar de sus alegacio- *817 nes— el propio señor Crespo Claudio presentó el informe financiero correspondiente al año en cuestión.
Por lo tanto, no cabe duda que la opinión emitida en este caso por la Oficina de Ética Gubernamental no cumple con lo necesario para ser considerada como una “orden o resolución”. Además de que no adjudica propiamente una controversia, la opinión también se encuentra desprovista de determinaciones de hecho y de conclusiones de derecho aplicadas a un cuadro fáctico particular. Si bien la opinión advierte del derecho a solicitar una revisión judicial ante el Tribunal de Apelaciones, lo cierto es que eso —por sí solo— no la convierte en una determinación de carácter adjudicativo. Véase, en términos similares, Padilla Falú v. A.V.P., supra; Vázquez v. A.R.Pe., 128 D.P.R. 513 (1991).
Conforme a lo anterior, no podemos endosar la tesis de la Oficina de Ética Gubernamental a los efectos de que, si bien el proceso mediante el cual se emitió la opinión no cumplió con los requisitos de la adjudicación formal, éste puede ser considerado como un proceso de adjudicación informal. Además de que ya hemos concluido que la opi-nión en cuestión no constituye una determinación adjudi-cativa, la improcedencia de dicha alegación surge clara-mente de las propias disposiciones de la L.P.A.U. y de la ley orgánica de la agencia.
Nótese que, por un lado, el proceso que nos ocupa no está incluido en el listado de procedimientos informales mencionados en la Sec. 3.1 de la L.P.A.U.(6) los cuales, por su naturaleza, están exentos de los requisitos establecidos para la adjudicación formal de controversias, a saber: (1) la notificación oportuna de los cargos, (2) él derecho a presentar evidencia, (3) el derecho a una adjudicación imparcial y *818 (4) el derecho a que la decisión esté fundamentada en el expediente. 3 L.P.R.A. see. 2151.
Además, la Ley de Ética Gubernamental tampoco le confiere naturaleza de procedimiento adjudicativo informal al proceso mediante el cual se emitió la opinión que nos ocupa. La opinión fue emitida por la Oficina de Ética Gubernamental en virtud del Art. 2.4 del referido estatuto, el cual le confiere autoridad para establecer un servicio de opiniones sobre los asuntos de su incumbencia. En particular, el artículo dispone, en lo pertinente, lo siguiente:
El Director [de la Oficina de Ética Gubernamental] tendrá los siguientes deberes y poderes:
(n) Establecer un servicio de opiniones emitidas sobre los asuntos de su incumbencia que sean de aplicación general o sobre asuntos específicos que se le consulten. Las opiniones del Director deberán ser recopiladas, publicadas y estar dispo-nibles tanto para los organismos de gobierno así como para el público en general. 3 L.P.R.A. sec. 1814(n).
En conformidad con la autoridad legislativa así conferida, la Oficina de Ética Gubernamental promulgó el Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico. El propósito del cuerpo reglamentario no es otro que hacer viable que el Director Ejecutivo pueda cumplir con su “deber de interpretar, aplicar y hacer cumplir las disposiciones de la Ley de Ética Gubernamental y sus Reglamentos”. Id., pág. 1. Igualmente, mediante éste se procura que dicho funcionario cumpla con la obligación de proveer información y promover la difusión, comprensión y educación de las normas éticas contenidas en la Ley de Ética Gubernamental. Véase Art. II del Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental, pág. 1.
Tal como se desprende de la disposición transcrita de la Ley de Ética Gubernamental y de las particularidades del Reglamento de Opiniones y Consultas, el proceso mediante el cual la Oficina de Ética Gubernamental emitió la Opi- *819 nión Núm. OPC-04-002 constituye un mecanismo de con-sultas disponible para que la agencia eduque sobre las nor-mas éticas contenidas en la Ley de Etica Gubernamental. Este mecanismo de consulta representa un vehículo infor-mativo mediante el cual la Oficina de Etica Gubernamen-tal, previa solicitud, orienta a las personas sujetas a su jurisdicción sobre asuntos específicos o generales que se le consulten. Este constituye meramente un mecanismo adi-cional que tiene la agencia disponible para hacer constar su interpretación de la ley habilitadora.(7)
Tratándose de una expresión de esa índole, no cabe duda de que la opinión en cuestión constituye, más bien, una interpretación oficial de la Oficina de Etica Gubernamental con respecto al alcance de su ley habilitadora. La L.P.A.U. define este concepto, precisamente, como una interpretación formal de la agencia sobre la ley que está bajo su administración, que se expide a solicitud de parte o a iniciativa propia y que se hace formar parte del repertorio formal de interpretaciones de la agencia. 3 L.P.R.A. see. 2101(d).(8) Ciertamente, esta opinión cumple con cada uno de esos criterios.
Por un lado, la interpretación realizada por la agencia sobre su ley orgánica surgió en esta ocasión a solicitud de parte. A su vez, según el texto de la opinión, la interpreta-ción allí expresada constituye la posición formal y oficial de la agencia. Finalmente, según lo dispuesto en el Art. 2.4 de la Ley de Etica Gubernamental, dicha opinión debe ser re- *820 copilada y publicada para beneficio de la persona que soli-citó la consulta y para el público en general(9)
Aunque, tal como sostiene el profesor Fernández Quiñones, las “interpretaciones oficiales” podrían ser equivalentes a las reglas interpretativas(10) éstas indudablemente constituyen un mecanismo adicional para que las agencias hagan constar su posición formal sobre las leyes y los reglamentos que administran. De hecho, se ha reconocido que las agencias emplean variedad de mecanismos para aclarar e interpretar dichos preceptos. “Los formatos potenciales incluyen reglas legislativas, adjudicaciones, reglas interpretativas, declaraciones de política pública, manuales, guías, instrucciones de personal, opiniones y teorías legales”. (Traducción nuestra y énfasis suplido.) 1 Pierce, Administrative Law Treatise 4th Sec. 3.5, pág. 151 (2002). Conforme a ello, no cabe duda de que para lograr su cometido de clarificar las leyes en controversia la Oficina de Ética Gubernamental podía emplear el mecanismo de la opinión, el cual —de hecho— no es ajeno a nuestro sistema de derecho administrativo.
De todas maneras, dado que la expresión realizada en este caso por la Oficina de Ética Gubernamental *821 mediante el formato de opinión no cumple con lo necesario para ser considerada una “orden o resolución final” prove-niente de un proceso propiamente adjudicativo, ésta no es revisable mediante el recurso de revisión judicial. Siendo así, resulta forzoso concluir que el Tribunal de Apelaciones no tenía jurisdicción para revisar mediante dicho recurso la opinión emitida en este caso por la Oficina de Etica Gubernamental. Debemos recordar que los tribunales no tienen discreción para asumir jurisdicción donde no la hay. Souffront v. A.A.A., 164 D.P.R. 663 (2005); Padilla Falú v. A.V.P., supra. Por lo tanto, procedía que el foro apelativo se declarara sin jurisdicción para examinar mediante él re-curso de revisión judicial la Opinión Núm. OPC-04-002 emitida por la Oficina de Etica Gubernamental.
Dado que el planteamiento jurisdiccional presentado por el peticionario dispone del caso en su totalidad, no es necesario considerar el restante señalamiento.(11)
IV
Por los fundamentos que anteceden, resolvemos que el Tribunal de Apelaciones erró al asumir jurisdicción sobre el recurso de revisión judicial presentado por el señor Crespo Claudio. En consecuencia, se revoca la sentencia recurrida.

Se dictará sentencia de conformidad.

 Según surge del expediente, dicho proceso fue paralizado por el foro de ins-tancia hasta que se resuelva el presente trámite apelativo.

 En este sentido, nuestro ordenamiento se ajustó a la norma que impera en la jurisdicción federal según el Administrative Procedure Act, 5 U.S.C.A. sec. 551 et seq., el cual requiere que exista una “acción administrativa final” (final agency action) para que se active el derecho a la revisión judicial. Véase 5 U.S.C.A. see. 704. En específico, se deben satisfacer dos condiciones: (1) que la acción de la agencia represente el final del proceso decisorio, de manera que no sea tentativa o interlocu-toria, y (2) que mediante ésta se determinen derechos u obligaciones o que de ella puedan surgir consecuencias legales. Bennet v. Spear, 520 U.S. 154 (1997); Marine Terminal v. Rederi. Transatlantic, 400 U.S. 62 (1970). De hecho, a base del criterio de finalidad, algunos tribunales se han negado a revisar memorandos y otros documen-tos similares al que nos ocupa. Véanse, por ejemplo, Aerosource, Inc. v. Slater, 142 F.3d 572 (3er Cir. 1998), donde se entendió que en realidad la determinación de la agencia no imponía una obligación o denegaba un derecho, y Appalachian Energy Group v. E.P.A., 33 F.3d 319 (4to Cir. 1994), donde se resolvió que cierto memorando en el que se advertía al destinatario sobre la necesidad de una autorización para realizar una actividad particular, no podía ser considerado como una “acción admi-nistrativa final”.

 Según se conoce, la doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el abstracto o bajo hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980).

 Precisamente, a la luz de la doctrina de madurez, en Asoc. Guardias Penales v. Srio. de Justicia, 87 D.P.R. 711 (1973), nos negamos a revisar una actuación ad-ministrativa que no tenía efectos directos sobre las partes, porque el reglamento que alegadamente les afectaba se encontraba aún en etapa de propuesta. De forma similar, en Meléndez de París v. Srio. Servicios Sociales, 107 D.P.R. 690 (1978), resolvi-mos que era prematuro el recurso de revisión presentado por un ciudadano a quien se le había notificado una deuda por concepto de un pago indebido de cupones de alimentos. En vista de que en esa etapa no se sabía si la agencia le condonaría la deuda, determinamos que la controversia no estaba debidamente trabada y que, por lo tanto, era improcedente la intervención del tribunal.

 No obstante, esto no implica que no existan excepciones a esta norma general. A tales efectos, hemos dicho que, aunque la doctrina de “orden y resolución final” es distinguible de la de “agotamiento de remedios administrativos”, ambas tienen un alcance análogo y, por lo tanto, de ordinario, tienen las mismas excepciones. Véase J. Exam. Tec. Méd. v. Elias et al., 144 D.P.R. 483 (1997).

 Tales procesos son los siguientes: (1) la adjudicación de subastas, (2) la con-cesión de préstamos, (3) las becas, (4) los subsidios, (5) las subvenciones, (6) las emisiones de deuda, (7) las inversiones de capital, (8) los reconocimientos o premios y (9) todos los trámites o etapas del proceso de evaluación de documentos ambienta-les requeridos por la Ley sobre Política Pública Ambiental y el reglamento aprobado al amparo de ésta. 3 L.P.R.A. sec. 2151(a).

 Si bien para hacer su interpretación de la ley la agencia podía usar otros formatos como boletines, manuales o cartas, en esta ocasión optó por el mecanismo de la “opinión”.

 Aunque este concepto no se emplea de forma literal en el resto de la Ley Procedimiento Administrative Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), lo cierto es que la Sec. 1.6 de este estatuto dispone que las agencias deben tener disponible para reproducción, a solicitud de persona interesada, las interpre-taciones así adoptadas según las leyes que administran. Véase 3 L.P.R.A. see. 2105(d).

 Aun en el caso de que la agencia no haya cumplido con el deber de publicar dicha opinión, coincidimos con el profesor Fernández Quiñones cuando aduce que el cumplimiento con el criterio de “formar parte del repertorio formal de interpretacio-nes de la agencia” se puede lograr con algún acto positivo de la agencia para que la interpretación adquiera ese rango. Véase D. Fernández Quiñones, Derecho Adminis-trativo, 2da ed., Colombia, Ed. Forum, 2001, pág. 27. Sin duda, en este caso la agencia hizo lo propio al hacer constar que la interpretación allí consignada era la posición oficial de la agencia y al expresar, incluso, que por medio de esa opinión quedaba derogada parte de otra (OPC-97-366).

 Véase Fernández Quiñones, op. cit., pág. 26. Conviene señalar que las reglas interpretativas suelen ser directrices u otras reglamentaciones menos formales que la agencia aprueba para darle uniformidad a sus propios procesos, para pautar la discreción administrativa o para otros fines internos. Hernández v. Col. de Optómetras, 157 D.P.R. 332 (2002). Dado que no se consideran dentro de la definición de regla o reglamento, este tipo de directriz está exenta del proceso de reglamentación formal establecido en la L.P.A.U. 3 L.P.R.A. sees. 2102(1) y 2127. Se han considerado reglas interpretativas, por ejemplo, ciertos documentos, manuales y boletines adop-tados por las agencias para guiar a su personal y al público en general a la hora de interpretar la ley. Fernández Quiñones, op. cit., pág. 26.

 Tampoco habremos de expresarnos en torno a la procedencia del recurso de sentencia declaratoria para revisar la corrección de la opinión emitida en este caso por la Oficina de Ética Gubernamental. Dado que esa no es la controversia que nos ocupa, y ya que existe un proceso pendiente ante el Tribunal de Primera Instancia dirigido a dilucidar tal cosa, no nos corresponde en esta ocasión pasar juicio sobre ello.