Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PROGRAMA DE SOLIDARIDAD-UTIER<br><br>Parte Peticionaria<br><br>v.<br><br>DEPARTAMENTO DEL TRABAJO Y LOS RECURSOS HUMANOS<br><br>Parte Recurrida | TA2025CE00181 | *Revisión Administrativa* procedente de la Comisión Apelativa del Servicio Público<br><br>Sobre:<br>Petición de Representación<br><br>Caso núm.:<br>PR-24-004 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

El 23 de julio de 2025, el Programa de Solidaridad-Utier (parte peticionaria) presentó ante nos un *Recurso de Revisión Administrativa*[2] en el que solicitó que revoquemos la *Resolución* emitida el 16 de mayo de 2025, notificada el 20 de mayo de 2025, por la Comisión Apelativa del Servicio Público (CASP).[3] En el aludido dictamen, la CASP resolvió que procedía el cierre y archivo de la *Petición de Representación* instada por la parte recurrente debido a que la *Ley Para Garantizar la Negociación Colectiva*, Ley Núm. 9 de 30 de junio de 2021 (Ley Núm. 9-2021), según enmendada, 3 LPRA sec. 9838, *et. seq*, produjo el efecto de extender los convenios colectivos.

Por los fundamentos que expondremos a continuación, se desestima el recurso ante nuestra consideración.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Annette M. Prats Palerm.
[2] Aunque la parte peticionaria tituló el recurso como *Revisión Administrativa*, la parte peticionaria lo presentó como un *Certiorari*. En vista de lo anterior, acogemos el mismo como un recurso de revisión judicial, pero mantenemos el alfanumérico asignado por la Secretaria de este Tribunal.
[3] Apéndice del Recurso de Revisión Administrativa, *PR24-004 2025-05-20RES*.

## I.

El caso de marras tiene su inicio cuando el 4 de diciembre de 2024, la parte peticionaria instó una *Petición de representación* en la que esbozó su interés en representar a los empleados de la Unidad Apropiada adscrita al Departamento del Trabajo y Recursos Humanos (DTRH o parte recurrida).[4] Particularmente, la parte peticionaria indicó que aspiraba en convertirse en el Representante Exclusivo de la Unidad Apropiada. Asimismo, anejó junto con su petición 256 endosos firmados por los empleados de la Unidad Apropiada.

El 9 de diciembre de 2024, la CASP le cursó un correo electrónico al DTRH en la que le informó acerca de la *Petición de Representación* incoada por la parte peticionaria.[5] En dicha misiva, la CASP le informó que emitió una Certificación de Representante Exclusivo, Certificación Núm. 043, en la que certificó a la División de Empleados Públicos, UGT (SEIU) como representante exclusivo de la Unidad Apropiada de Empleados del DTRH. Además, razonó que conforme la Ley Núm. 9-2021, la División de Empleados Públicos UGT (SEIU) continuaba siendo el representante exclusivo de la "unidad de empleados centrales" del DTRH. Asimismo, sostuvo que la División de Empleados Públicos UGT (SEIU) le cursó una comunicación al DTRH en la que manifestó su intención de iniciar negociaciones para un nuevo convenio colectivo.

Tras varios trámites procesales, el 16 de mayo de 2025, notificada el 20 de mayo de 2025, la CASP emitió una *Resolución* en la que esgrimió que el 20 de agosto de 2004, la CASP certificó a la División de Empleados Públicos, UGT (SEIU) como el representante exclusivo de la Unidad de Empleados de Programas Centrales del DTRH.[6] En esa línea, aseveró que las partes firmaron un convenio

---

[4] *Íd., Certificación.*
[5] *Íd., Contestación a requerimiento de información.*
[6] *Íd., PR24-004 2025-05-20RES.*

colectivo con vigencia del 29 de agosto de 2014 hasta el 30 de junio de 2017.

No obstante, la CASP argumentó que el 23 de enero de 2017, la Asamblea Legislativa aprobó la *Ley para atender la Crisis económica, fiscal y presupuestaria para garantizar el funcionamiento del Gobierno de Puerto Rico*, Ley 3 de 23 de enero de 2017 (Ley Núm. 3-2017), según enmendada, 3 LPRA sec. 9391, *et. seq,* la cual tuvo el efecto de extender los convenios colectivos hasta el 30 de junio de 2021. Además, adujo que la aprobación de la Ley Núm. 9-2021, extendió los convenios colectivos que expiraban el 30 de junio de 2021 o a la fecha en que entraba en vigor la ley, en cuanto a las cláusulas no económicas u otras cláusulas que no fuesen afectadas por el mencionado estatuto. Por consiguiente, resaltó que el citado estatuto impidió la presentación y celebración de las elecciones sindicales de los convenios colectivos extendidos.

Consecuentemente, la CASP resolvió que las leyes previamente contempladas produjeron el efecto de extender los convenios colectivos. A su vez, determinó que la extensión de los convenios constituyó un impedimento para radicar y celebrar las elecciones de representación o de descalificación de un representante exclusivo. Por ende, la parte peticionaria presentó una *Petición de representación* durante la vigencia de un convenio colectivo y, por tanto, la CASP estaba vedada de continuar la tramitación de la *Petición de representación* instada por la parte peticionaria. Así pues, la CASP ordenó el cierre y archivo de la *Petición de representación.*

Insatisfecha, el 5 de junio de 2025, la parte peticionaria radicó una *Moción en solicitud de reconsideración* en la que alegó que la CASP le negó su derecho a celebrar una elección para ser considerada como representante de la División de Empleados, UGT (SEIU). Además, arguyó que no existen negociaciones entre el DTRH

y la División de Empleados, UGT (SEIU) para mantener a la División de Empleados, UGT (SEIU) como el representante exclusivo del DTRH.[7] Por tanto, adujo que se le estaba coartando a los empleados el derecho a la libre asociación.

El 23 de junio de 2025, la CASP emitió y notificó una *Resolución* en la que declaró No Ha Lugar la *Moción en solicitud de reconsideración*.[8]

Inconforme, el 23 de julio de 2025, la parte peticionaria compareció ante nos mediante un recurso titulado *Petición de Revisión Administrativa* en la que formuló los siguientes señalamientos de error:

> Primer error: Erró la Honorable CASP al ordenar el cierre y archivo de la Petición de Elección, toda vez que se basa en disposiciones que laceran el derecho constitucional a la libertad de expresión.
>
> Segundo error: Erró la Honorable CASP al ordenar el cierre y archivo de la Petición de Elección, toda vez que se basa en disposiciones que laceran el derecho constitucional a la libertad de expresión.
>
> Tercer error: Erró la Honorable CASP al no resolver todas las controversias en torno a las determinaciones de hecho y conclusiones de derecho al concluir su proceso investigativo.
>
> Cuarto error: Erró la Honorable CASP al concluir que no procede la Petición de Elecciones solicitada, aún cuando se proveyó evidencia de que la Unión recurrida no goza de las protecciones de la Ley Núm. 9-2021 toda vez que comenzó a negociar tres años fuera del término establecido para gozar de las protecciones de la Ley Núm. 9-2021.

En atención a nuestra resolución, el 15 de septiembre de 2025, el DTRH presentó una *Solicitud de desestimación* en la que argumentó que esta Curia carece de jurisdicción para atender la controversia a la luz de que la *Resolución* recurrida no es final y firme.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso de epígrafe.

---

[7] *Íd., Caso PR-24-004 Moción en solicitud de reconsideración.*
[8] *Íd., Resolución del 25 de junio de 2025.*

**II.**

**A.**

La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante entre las partes. *MCS Advantage, Inc. V. Fossas Blanco*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385–386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). Los tribunales estamos impedidos de atender controversias en las que carezcamos de jurisdicción sobre la materia. *MCS Advantage, Inc. V. Fossas Blanco, supra*, pág. 144-145. La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la tienen. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Morán v. Martí*, 165 D.P.R. 356 (2005). Los asuntos relacionados a la jurisdicción son privilegiadas y deben resolverse con preferencia a cualquiera otras. *SLG Szendrey Ramos v. F. Castillo*, supra pág. 882. Los tribunales deben examinar su propia jurisdicción, así como del foro de donde procede el recurso ante su consideración. *SLG Szendrey Ramos v. F. Castillo*, supra pág. 883.

**B.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio

dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020). La Revisión Judicial es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. *Íd.* 3 LPRA sec. 9671. La Revisión Judicial de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. de San Juan* v. *J.C.A.*, 149 DPR 263, 279 (1999); *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach*, 214 DPR 370 (2024). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*. Asimismo, la sección 4.2 de la LPAU establece que,

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
> *Íd.* 3 LPRA sec. 9672.

El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra,* pág. 378. La LPAU no define lo que es una orden o resolución final pero, el Tribunal Supremo ha definido una orden o resolución final como "las decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes". *J. Exam*

*Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). La orden o resolución final, resuelve todas las controversias pendientes ante la agencia y da finalidad al proceso administrativo. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378, citando a: *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 741–742 (2023); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016); *A.R.Pe. v. Coordinadora*, 165 DPR 850, 867 (2005); *Crespo Claudio v. O.E.G.*, 173 DPR 804, 813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28 (2006). Las decisiones administrativas que no cumplan ese criterio no son revisables judicialmente. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378.

## C.

El Art. 3 de la Ley Núm. 3-2017, *supra* sec. 9393, establece que la mencionada ley fue creada con el propósito de atender la crisis fiscal, económica y presupuestaria que atravesaba Puerto Rico. Además, la Ley Núm. 3-2017 aplica a todas las Entidades de la Rama Ejecutiva del Gobierno de Puerto Rico, es decir a agencias, instrumentalidades y corporaciones públicas del Gobierno de Puerto Rico, con independencia del grado de autonomía fiscal o presupuestaria que le confiera su ley orgánica u otra legislación aplicable. *supra* sec. 9395. En lo pertinente a la controversia, el Art. 8 de la Ley Núm. 3-2017, *supra* sec. 9398, establece que:

> Los convenios colectivos expirados a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de la misma, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta el 30 de junio de 2021. Dicha extensión constituirá impedimento para la presentación y celebración de elecciones de representación.
> Una vez terminada la vigencia de esta Ley, los sindicatos que al 1ro. de julio de 2014 representaban a los empleados unionados en cada Entidad de la Rama Ejecutiva, podrán comenzar la negociación de nuevos convenios colectivos, incluyendo cláusulas económicas y no económicas, y las Entidades de la Rama Ejecutiva negociarán los mismos, conforme la normativa y derecho aplicable, y considerando primordialmente las realidades de la situación económica y fiscal de la Entidad de la Rama Ejecutiva y del Gobierno en general.

Por otro lado, la Sección 4.2 de la Ley Núm. 9-2021, *supra* sec. 9398, estatuye que,

Los convenios colectivos expirados al 30 de junio de 2021 o a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo. Dicha extensión constituirá un impedimento para la radicación y celebración de elecciones de representación o de descalificación de un representante exclusivo de negociación.

Es decir, la Asamblea Legislativa reiteró lo dispuesto en la Ley Núm. 3-2017 acerca los convenios colectivos expirados y la prohibición para la radicación y celebración de elecciones de representación sobre un representante exclusivo durante el término de la extensión. Cónsono con lo anterior, la Sección 10.1 de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998 (Ley Núm. 45-1998), según enmendada, 3 LPRA sec. 1452d, delineó los dictámenes emitidos por la CASP que son sujetos de revisión judicial al disponer lo siguiente:

El Tribunal de Apelaciones, a solicitud de parte, tendrá jurisdicción para entender discrecionalmente en los recursos de revisión de órdenes y resoluciones finales de la Comisión según los términos que dispone la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme" [Nota: Derogada y sustituida por la Ley 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"]. Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan. El Tribunal de Apelaciones, vendrá obligado a dictar una orden, en aquellos casos, en que la Comisión habiendo impuesto una multa solicite mediante una moción ex-parte una orden para congelar de los fondos de la organización sindical una cantidad de dinero igual a la cantidad de la multa impuesta

Con ello, la Sección 508 del *Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público*, Reglamento Núm. 6385 del 28 de diciembre de 2001 (Reglamento Núm. 6385), pág. 37, establece que,

A. Se podrá solicitar revisión judicial únicamente de las órdenes y resoluciones finales de la Comisión. No se considerará como Decisión y Orden final la determinación que tome la Comisión en una reconsideración de una resolución u orden parcial.
B. Cualquier parte adversamente afectada por una orden o resolución final y que haya agotado todos los remedios provistos por la Comisión podrá presentar una solicitud de

revisión ante el Tribunal de Circuito de Apelaciones, de conformidad con la Ley.

C. Transcurridos los términos de reconsideración ante la Comisión y de revisión ante el Tribunal de Circuito de Apelaciones, las órdenes y resoluciones de la Comisión serán finales y firmes.

Empero, el Tribunal Supremo ha resuelto que, una petición de representación desestimada no es final. La determinación es una sin perjuicio dado que el peticionario puede volver a instar una solicitud de representación siempre y cuando cumpla con las disposiciones estatutarias. *Depto. Educ v. Sindicato Puertorriqueño*, 168 DPR 527, 550 (2006). En específico, una petición de representación de un síndico no impide que este pueda volver a iniciar un procedimiento para representar a la unidad apropiada en cuestión. *Depto. Educ v. Sindicato Puertorriqueño, supra*, pág. 550. Particularmente, el Tribunal Supremo expresó lo siguiente:

> [L]a determinación en que se desestima la petición no es final. Una determinación de la Comisión sobre estos asuntos es sin perjuicio, ya que dentro del término de presentación que dispone la Sec. 303(C) del Reglamento de la Comisión —periodo de noventa a sesenta días previo al vencimiento de un convenio colectivo o cuando no exista un convenio— el peticionario puede volver a presentar una petición de representación siempre y cuando cumpla con los requisitos de la citada Sec. 302 del Reglamento Núm. 6385. *Depto. Educ. v. Sindicato Puertorriqueño, supra*, pág. 550.

Además, el máximo foro judicial interpretó que la petición de representación es un asunto encomendado a la pericia de los organismos administrativos y no es una determinación final. *Íd.* Por tanto, los foros apelativos carecemos de jurisdicción. *Íd.* En esa línea, un panel hermano de este Tribunal de Apelaciones desestimó una Revisión Judicial debido a que razonó que carecía de jurisdicción dado que la Resolución emitida por la CASP con respecto a una *Petición de Representación* "no equivale a una resolución final revisable por este Foro". *Departamento de Transportación y Obras Públicas v. Programa de Solidarida-UTIER*, KLRA202500106.

**III.**

En virtud de las normas jurídicas pormenorizadas nos corresponde determinar si estamos en posición de atender el recurso ante nuestra consideración. Esta Curia tiene jurisdicción para atender una orden o resolución administrativa que brinde finalidad a una controversia. Cónsono con lo anterior, la LPAU nos faculta intervenir en los méritos de un dictamen final emitido por un organismo administrativo. De lo contrario carecemos de jurisdicción para atender la determinación sujeta a ser revisada por este Tribunal de Apelaciones. Sin embargo, es conocido que debemos ser "celosos guardianes de nuestra propia jurisdicción" y no intervenir en asuntos en los que carezcamos de tener jurisdicción sobre la materia.

A esos efectos, una *Petición de representación,* como en el caso de autos, es un asunto que aún no tiene finalidad y, por tanto, es una resolución interlocutoria. Con ello, el máximo foro judicial ha interpretado que los foros apelativos no tienen jurisdicción para atender una petición de representación tras versar sobre un asunto interlocutorio. <u>Ello, puesto que un peticionario puede nuevamente interponer un recurso de petición de representación.</u> Asimismo, los asuntos relacionados a una petición de representación han sido delegado al organismo administrativo tras tener la pericia requerida para atender el asunto. Ciertamente, estamos imposibilitados para ejercer nuestra función apelativa. Además, destacamos que, en el caso de epígrafe, aún continua vigente el convenio acordado entre el DTRH y la División de Empleados, UGT (SEIU). De igual forma, los estatutos previamente citados y contemplados establecen que el convenio entre el DTRH y la División de Empleados, UGT (SEIU) continua vigente, salvo que la División de Empleados, UGT (SEIU) determine no proseguir en ser el representante exclusivo del DTRH.

A la luz de lo esbozado, resolvemos que carecemos de jurisdicción para atender el caso ante nos.

**IV.**

Por los fundamentos que anteceden, desestimamos el recurso ante nuestra consideración.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones