Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| RODRIGUEZ READY MIX, INC.[1]<br>Peticionario<br><br>v.<br><br>OFICINA DE GERENCIA DE PERMISOS<br>Agencia Recurrida<br><br><br>**HORMIGONERA CHAPARRO, INC.**<br>Parte Interventora-Recurrente | KLRA202500185 | *REVISIÓN ADMINISTRATIVA*<br>Procedente de la Oficina de Gerencia de Permisos<br><br>Sobre:<br>REVISIÓN ADMINISTRATIVA (CONSULTA DE UBICACIÓN)<br><br><br>Caso núm.:<br>2023-48872-CUB-010271 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Robles Adorno.[2]

Robles Adorno, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2025.

El 26 de marzo de 2025, Hormigonera Chaparro, Inc. (Hormigonera Chaparro o parte recurrente), presentó ante nos una *Petición de Revisión Administrativa* en la que solicitó que revoquemos la *Resolución de Consulta de Ubicación* emitida y notificada el 9 de octubre de 2024, por la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio (OGPe o parte recurrida).[3]

En el aludido dictamen, la OGPe aprobó favorablemente la solicitud de *Consulta de Ubicación* presentada por Rodríguez Ready Mix, Inc. (Rodríguez Ready Mix) debido a que Rodríguez Ready Mix cumplió cabalmente con las especificaciones de variación en uso a tenor el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionado al Desarrollo, Uso de Terrenos y Operación de*

---

[1] Parte peticionaria para efectos de la Querella en la agencia administrativa.
[2] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rodríguez Flores.
[3] Apéndice de la Petición de Revisión Administrativa, Anejo 10.

*Negocios de la Junta de Planificación* de 16 de junio de 2023 (Reglamento Conjunto de 2023).[4] Además, la determinación de la OGPe fue fundamentada en que ostenta discreción para resolver la solicitud de consulta de ubicación por medio de una variación en uso.

Por los fundamentos que expondremos a continuación, revocamos la *Resolución* recurrida.

**I.**

El caso de autos tiene su origen el 9 de enero de 2024, cuando Rodríguez Ready Mix solicitó ante la OGPe una *Consulta de Ubicación* con el fin de variar el uso de un terreno, del cual era arrendataria, y construir una planta dosificadora de hormigón al amparo del Reglamento Conjunto de 2023. En relación con ello, Rodríguez Ready Mix presentó un Memorial Explicativo en el que indicó que el predio estaba ubicado en la Carretera PR-417, Km 1.9, Barrio Cerro Gordo de Aguada y actualmente opera una planta de asfalto. Argumentó que, ese terreno, según el mapa de calificación de suelos, está calificado en el Distrito I-P (Industrial Pesado) y tiene una clasificación de suelo SRC (Suelo Rústico Común), según el Plan de Ordenamiento Territorial (POT) del Municipio de Aguada. Así mismo, en la solicitud incluyó lo siguientes documentos: (1) escritura de compraventa del dueño del terreno; (2) contrato de arrendamiento; (3) una tabla de parámetros reglamentarios; y (3) una Evaluación Ambiental aprobada por la División de Evaluación Ambiental de la OGPe. Ante ello, adujo que procedía concederle el permiso solicitado para variar el uso de terreno para incluir una dosificadora de hormigón.

Así las cosas, según consta en el expediente de la OGPe, se citó el caso para vistas públicas el 10 de abril de 2024. Ese mismo

---

[4] *Íd.*, Anejo 3.

día, la OGPe emitió una *Resolución* en la que declaró Ha Lugar la solicitud de intervención de Hormigonera Chaparro.[5]

El 2 de julio de 2024, la OGPe emitió una *Minuta de Vista Pública* en la que citó la continuación de la vista pública para el 27 y 28 de junio de 2024.[6]

El 13 de julio de 2024, Hormigonera Chaparro radicó una *Oposición a Solicitud de Consulta de Ubicación* mediante la cual indicó que la OGPe carecía de jurisdicción para atender el recurso.[7] Ello pues, a tenor con el Reglamento Conjunto de 2023, la Junta Adjudicativa no ostenta jurisdicción para conceder una variación de uso en aras de alterar la calificación de un Distrito de un suelo a otro tipo de Distrito. Añadió que, la OGPe no debió celebrar la vista pública por no cumplir con todos los requisitos sustantivos y procesales correspondientes. En cuanto a los criterios sustantivos, puntualizó que la *Consulta de Ubicación* no satisface los criterios requeridos. Consecuentemente, la OGPe carecía de prueba sobre la justificación de las variaciones y ausencia de la Declaración de Impacto Ambiental para conceder la variación de uso.

Por otro lado, con relación al aspecto procesal, puntualizó que Rodríguez Ready Mix incumplió con la sección 2.9.2(k) del Reglamento Conjunto de 2023, dado que no tenía una certificación del plano. Por su parte, citó la sección 2.1.104(c) del Reglamento Conjunto de 2023, al entender que no pautó un anuncio en una emisora de radio de difusión local con mayor audiencia de la comunidad, que se vería impactada por la variación de uso en controversia, por lo menos en dos ocasiones, en el horario entre las 7:00 a.m. y 7:00 p.m. Igualmente, sostuvo que la Junta Adjudicativa no debió celebrar la vista adjudicativa sin antes obtener una rezonificación o cambio de calificación a I-E (Industrial

---

[5] *Íd.*, Anejo 10.
[6] *Íd.*, Anejo 8.
[7] *Íd.*, Anejo 7.

Especializado) de la zona. Finalmente, planteó que incumplió con la debida notificación hacia los colindantes de la zona, al amparo de la sección 2.1.9.2(L) del Reglamento Conjunto de 2023, y con la copia de la declaración jurada sometida de Radio WUNO.

El 9 de octubre de 2024, la OGPe emitió una *Resolución* en la que formuló cuarenta y siete (47) determinaciones de hechos relacionados al tracto procesal y la prueba presentada ante su consideración.[8] A su vez, indicó que, la Junta Adjudicativa tenía la facultad para ver casos discrecionales conforme a la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009). Además, sostuvo que la consulta de ubicación fue solicitada a través de una variación de uso, toda vez que el uso propuesto no se reconoce ministerialmente en el listado de usos permitidos para un distrito calificado como I-P, de conformidad con la Sección 6.1.16.2 del Reglamento Conjunto 2023. Ello, al entender que, al momento de la recalificación del predio, mediante la aprobación del POT de Aguada, la calificación I-P resultaba la certificación correspondiente para las previas actividades en la parcela; actividades que allí operan por los pasados 50 años y que ahora corresponden a un distrito calificado (I-E), según el Reglamento Conjunto de 2023. Ante este cuadro, resolvió que procedía conceder la variación de uso solicitada por Rodríguez Ready Mix.

En desacuerdo, el 25 de octubre de 2024, Hormigonera Chaparro presentó una *Solicitud de Revisión Administrativa* donde reafirmó que la OGPe incidió al no resolver el asunto jurisdiccional previamente planteado.[9]

El 30 de diciembre de 2024, la OGPe emitió y notificó una *Orden de Reseñalamiento* en la cual señaló vista para el 3 de febrero

---

[8] *Íd.*, Anejo 10.
[9] *Íd.*

de 2025 con relación a la *Solicitud de Revisión Administrativa* presentada.[10]

Ante la inacción de la agencia, el 26 de marzo de 2025, la parte recurrente presentó ante nos un recurso de *Revisión Administrativa* en la que formuló los siguientes señalamientos de error:

> Primer error: Erró la Oficina de Gerencia de Permisos, de ahora en adelante OGPe, al no haber determinado previo a la certificación de la vista pública, el aspecto jurisdiccional planteado.

> Segundo error: Erró la Oficina de Gerencia de Permisos, de ahora en adelante OGPe, aun asumiendo que tenía jurisdicción, al haber celebrado la vista pública cuando los requisitos procesales que establece la Ley 161-2009, según enmendada, no fueron satisfechos.

> Tercer error: Erró la Oficina de Gerencia de Permisos, de ahora en adelante OGPe, aun asumiendo que tenía jurisdicción, al conceder una variación de uso a un arrendatario.

> Cuarto error: Erró la Oficina de Gerencia de Permisos, de ahora en adelante OGPe, aun asumiendo que tenía jurisdicción, al no requerir una declaración de impacto ambiental- D.I.A., tal como lo mandata la Ley 406 de 26 de septiembre de 2024, según enmendada.

En atención a nuestra *Resolución,* luego de varios trámites procesales, el 28 de abril de 2025, la OGPe presentó un *Alegato en Oposición.* Ese mismo día, Rodríguez Ready Mix también presentó un *Alegato en Oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver el caso de epígrafe.

**II.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.,* (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio

---

[10] *Íd.,* Anejo 11.

dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020). La Revisión Judicial es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. *Íd.,* 3 LPRA sec. 9671. La Revisión Judicial de determinaciones administrativas principalmente responde a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. de San Juan* v. *J.C.A.*, 149 DPR 263, 279 (1999); *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach*, 214 DPR 370 (2024). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach*, *supra*. Asimismo, la sección 4.2 de la LPAU establece que,

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
> *Íd*. 3 LPRA sec. 9672.

El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378. La LPAU no define lo que es una orden o resolución final, pero, el Tribunal Supremo ha definido una orden o resolución final como "las decisiones que ponen fin al caso ante la

agencia y que tienen efectos sustanciales sobre las partes". *J. Exam Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). La orden o resolución final, resuelve todas las controversias pendientes ante la agencia y da finalidad al proceso administrativo. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378, citando a: *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 741–742 (2023); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016); *A.R.Pe. v. Coordinadora*, 165 DPR 850, 867 (2005); *Crespo Claudio v. O.E.G.*, 173 DPR 804, 813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28 (2006). Las decisiones administrativas que no cumplan ese criterio no son revisables judicialmente. *Edward Simpson* v. *Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378.

**B.**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 1 de diciembre de 2009 (Ley Núm. 161-2009), 23 LPRA sec. 9011, *et. seq*, fue creada con el fin de establecer un marco legal y administrativo para regir la solicitud, evaluación, concesión y denegación de permisos en Puerto Rico. Exposición de Motivos de la Ley Núm. 161-2009; *Diaz Vázquez v. Colon Pena*, 214 DPR 1135, 1143 (2024). Para ello, se creó la Oficina de Gerencia de Permisos como una Secretaría Auxiliar del Departamento de Desarrollo Económico y Comercio. Artículo 2.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9012.

En lo pertinente, la Ley Núm. 161-2009, *supra,* sec. 9012d, transfirió la jurisdicción a la Junta de Planificación conforme a los cambios de calificación o recalificación directa de solares y las de transacciones de terrenos públicos. Así mismo, le concedió la facultad jurisdiccional a la Junta Adjudicativa de la OPGe para evaluar y adjudicar, entre otros, asuntos de carácter discrecional. Sin embargo, en el Artículo 6.3 de la referida ley, determinó que la

Junta Adjudicativa "solo podrá delegar las siguientes funciones: la evaluación y adjudicación de toda consulta de ubicación en aquellos casos en las que la solicitud **no conlleve un cambio de calificación indirecto**". *Íd.*, sec. 9016g(2)(a) (énfasis nuestro).

A tenor con las facultades que le fueron conferidas por la Ley Núm. 161-2009, *supra*, la Junta de Planificación (JP), con la colaboración de la Oficina de Gerencia de Permisos y otras agencias concernientes, preparó un reglamento. Tras la correspondiente aprobación, se adoptó el *Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos* de la Junta de Planificación de 29 de noviembre de 2010 (Reglamento Conjunto de 2010). Sin embargo, luego los embates atmosféricos del 2017, se adoptó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionado al Desarrollo, Uso de Terrenos y Operación de Negocios* de la Junta de Planificación de 16 de junio de 2023 (Reglamento Conjunto de 2023), con el fin de promover la protección del ambiente. Al ser incompatible con el estado de derecho a la luz de la Ley Núm. 161, *supra,* el Reglamento Conjunto 2010 es inaplicable.

En lo pertinente, la Sección 19.12.1 del Reglamento Conjunto de 2010, *supra*, disponía que el propósito del Distrito Industrial Pesado (I-P) fuese el siguiente:

a. Este distrito se establece para clasificar áreas industriales pesadas, desarrolladas o a desarrollarse por proyectos específicos que por su naturaleza e intensidad requieren de una ubicación especial por lo que solamente se considerarán vía consulta de ubicación. Cualquier desarrollo propuesto en este distrito será evaluado por la Junta Adjudicativa o la Junta de Planificación si la propuesta es un desarrollo supra-regional.

b. La determinación de la extensión de terrenos para industrias pesadas estará basada en las potencialidades del área para el desarrollo de industrias pesadas, la dirección de los vientos, efectos detrimentales de las industrias pesadas sobre el aire, agua u otros tales como olores, ruidos, vibraciones y reflejos de luces; de las implicaciones del tránsito generado por estas industrias en el

sistema de transportación y de la mejor organización del uso de los terrenos. Como objetivo se persigue que los terrenos a clasificarse para industrias pesadas se dediquen a tales fines, excluyendo en este distrito los usos residenciales, comerciales e industrias livianas. Íd.

Asimismo, dentro de los usos compatibles con el propósito del Distrito I-P, se permitió el uso de productos de asfalto y productos de hormigón, tales como bloques. *Íd.*, sec. 19.12.2.

De otro lado, la Regla 6.1.16 del Reglamento Conjunto de 2023, *supra*, atiende los asuntos pertinentes al Distrito I-P. En la referida regla, la sección 6.1.16, *supra,* define el propósito del Distrito I-P como sigue:

a. Este distrito se establece para clasificar áreas para el establecimiento de industrias pesadas. Se persigue u ellos terrenos para industrias pesadas se dediquen a tales finales, excluyendo en este distrito los usos residenciales. Lo usos comerciales son permitido cuando sirvan de apoyo a la operación industrial pesada, mientras que las industrias livianas serán permitidas ministerialmente en este distrito.

b. La determinación de la extensión de terrenos para industrias pesadas estará basada en las potencialidades del área para el desarrollo de industrias pesadas, la dirección de los vientos efectos detrimentales de las industrias pesadas sobre el aire, agua u otros tales como olores, ruidos, vibraciones y reflejos de luces; de las implicaciones del tránsito generado por estas industrias en el sistema de transportación y de la mejor organización del uso de terrenos. Íd.

Sin embargo, en cuanto a los usos, este Reglamento Conjunto de 2023, no incluyó el uso de productos de asfalto y productos hormigón.

Conforme a la sección 6.1.14.1, Regla 6.1.14 del Reglamento Conjunto 2023, *supra*, pág. 411-412, el propósito del Distrito Industrial Especializado (I-E) está enmarcado en los siguientes enunciados:

a. Este distrito se establece para clasificar extensiones del suelo donde se promueven proyectos industriales específico que por su naturaleza e intensidad requieren de una ubicación especial, así como para identificar terreno dedicados o a dedicarse a extracción, excavación o remoción de material de la

corteza terrestre y onde en estos se podrá elaborar, fabricar, tratar, procesar o refinar de materiales.

b. Proyectos de extracción de material terrestre el distrito se extenderá hasta donde le análisis de reserva determine la presencia del material que se propone extraer.

c. Este distrito es uno de carácter rural, por lo que es cónsono con los suelos rústicos común así clasificados.

d. La determinación de la extensión de terrenos para estos usos estará basada en las potencialidades del área para el desarrollo propuesto en la consulta de ubicación a ser presentada ante la Junta Adjudicativa de la OGPe o Municipio Autónomo con Jerarquía de la I a la III.

e. La propuesta de estos usos o actividades deberán tomar en consideración entre otros, los ruidos, vibraciones, uso de explosivos, impacto sobre las vías por maquinaria, equipo, camiones, deterioro de las vías de tránsito, rotulación adecuada y seguridad.

f. Se promueve conservar y estimular el establecimiento de estos usos para atender las necesidades primordialmente asociadas a las actividades del recurso tierra y del sector de la construcción en el país y eventualmente conformar las actividades incompatible existentes. *Íd.*

Por su parte, la sección 6.1.14.2 del Reglamento Conjunto 2023, *supra*, establece lo correspondiente a los usos permitidos en Distrito I-E. Dentro de esos los usos permitidos se encuentra el uso industrial de dosificadora de hormigón o asfalto y productos de hormigón o bloques. *Íd.*

En cuanto a la consulta de ubicación, la sección 2.1.8.3 del Reglamento Conjunto de 2023, *supra*, pág. 21, define, en lo pertinente, la consulta de ubicación como "el [p]rocedimiento ante la OGPe o los Municipio Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. Las áreas no calificadas incluyen propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis". *Íd.*

Con respecto al asunto ante nuestra consideración, el Reglamento Conjunto establece, en la sección 6.3.2.1(a) que, "la variación en uso es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento Conjunto en una zona o distrito de calificación y que solo se concede, vía excepción, para evitar perjuicio a una propiedad cuando se demuestre que debido a circunstancias extraordinarias la aplicación estricta de esa reglamentación equivaldría a una confiscación de la propiedad ("taking")". *Íd.*, pág. 474.

De igual forma, el Reglamento Conjunto de 2023 establece en su Sección 6.3.1.5(c) en sus condiciones para otorgar variaciones que "**[l]a variación solicitada no tendrá el efecto de cambiar un distrito en otro, toda vez que esto constituye un cambio de calificación**, **el cual es jurisdicción de la JP o el Municipio Autónomo con jerarquía de la III a la V**, según aplique, este podrá solicitarse como tal, mediante el mecanismo correspondiente". *Íd.*, pág. 476. (énfasis nuestro).

Por último, nuestro Tribunal Supremo ha expresado que el propósito de las variaciones es aliviar las restricciones que regulan el disfrute de determinada propiedad, cuando la aplicación de la reglamentación sea irrazonable y le ocasione perjuicios a su propietario. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 267 (2007). De esta manera, las variaciones evitan[n] que una reglamentación existente se convierta en un instrumento inflexible e incapaz de acomodarse a situaciones extraordinarias. *Íd.* Empero, dado al carácter excepcional de las variaciones, las mismas no se favorecen y solamente deben concederse en situaciones realmente extraordinarias, cuando estén claramente justificadas y procesan conforme a las leyes y los reglamentos aplicables. *Íd.* Lo anterior se debe a que, el uso inapropiado e indiscriminado de este mecanismo podría destruir todo nuestro esquema de zonificación y cambiar

eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos. *Íd.*

**III.**

En el caso de epígrafe, la parte recurrente alegó que la OGPe erró al asumir la jurisdicción, tras acoger el recurso presentado como una consulta de ubicación con variación en uso, cuando realmente se trataba de un cambio en la calificación de la zona. Arguyó que, el Reglamento Conjunto de 2023, prohíbe conceder una variación que tenga el efecto de un cambio de calificación, por este ser un asunto en el que la jurisdicción le corresponde a la Junta de Planificación o del Municipio Autónomo con Jerarquía de la III a la V, según corresponda. *Íd.*, sec. 6.3.1.5(c).

Conforme las normativas jurídicas pormenorizadas, la Ley Núm. 161-2009, prohíbe a la Junta Adjudicativa acoger consultas de ubicación en aquellos casos en las que la solicitud conlleve un cambio de calificación indirecto. En efecto, es menester de la Junta de Planificación evaluar las solicitudes de recalificación, según dispone el Artículo 2.5 de la referida ley. *Íd.*, sec. 9012d.

Asimismo, la Sección 6.3.1.5(d) del Reglamento Conjunto de 2023, prohíbe conceder una variación en uso cuando la variación solicitada tenga el **efecto de cambiar de un distrito a otro**. Esto, luego de considerar las facultades otorgadas estatutariamente a la Junta de Planificación, quienes tienen la jurisdicción sobre los asuntos de cambio en calificación o recalificación del suelo.

Tras un análisis detallado del expediente, resolvemos que la OGPe erró al asumir jurisdicción en el caso de epígrafe.

Según surge del expediente, el predio objeto de la presente controversia está calificado como Distrito I-P donde actualmente existe y opera una dosificadora de asfalto desde el 2012 por concesión del Reglamento Conjunto de 2010. Ahora, mediante una *Consulta de Ubicación,* Rodríguez Ready Mix solicitó construir y

añadir una dosificadora de hormigón. Sin embargo, el actual Reglamento Conjunto de 2023, no permite el uso del Distrito I-P para dosificar hormigón. En cambio, el vigente reglamento añadió una nueva clasificación, Distrito I-E, en la que permite dosificar asfalto y hormigón.

Es forzoso concluir que, el permiso en controversia resulta en un cambio de distrito, cuando el uso del terreno es completamente distinto al reglamentado. En consecuencia, otorgar un permiso excepcional, como lo es el permiso de variación, para facultar a Rodríguez Ready Mix realizar labores en un predio no autorizado, tendría el efecto de inmiscuir un cambio de calificación del predio de un Distrito I-P a un Distrito I-E para dosificar asfalto y hormigón. Esto, en contra de las facultades otorgadas a la Junta Adjudicativa, según dispone la Ley Núm. 161-2009. Además, resolvemos que la OGPe se excedió de las facultades concedidas estatutariamente dado que asumió tener jurisdicción en un asunto del cual carece poseer jurisdicción. Ello, en virtud de que la Junta de Planificación es el organismo administrativo facultado para conceder una variación de uso que resulte en un cambio de distrito.

A tenor con lo anterior, resolvemos que la OGPe actuó incorrectamente al otorgarle el permiso de variación de uso a Rodríguez Ready Mix. Ello, a la luz de que la Rama Legislativa no le confirió la jurisdicción a la OGPe para otorgar un permiso de variación de uso que tenga el efecto de cambiar de un distrito a otro.

**IV.**

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones